JASON LAMONT HUNT, BY AND THROUGH HIS GUARDIAN AD LITEM, DAVID H. HASTY v. NORTH CAROLINA DEPARTMENT OF LABOR

No. 110PA97

(Filed 8 May 1998)

**1. Public Officers and Employees § 35 (NCI4th); State § 24 (NCI4th)— tort claim against state agency—public duty doctrine**

The public duty doctrine can apply to actions against state agencies brought under the Tort Claims Act.

**2. Public Officers and Employees § 35 (NCI4th)— exceptions to public duty doctrine**

The two recognized exceptions to the public duty doctrine are (1) where there is a special relationship between the injured party and the governmental entity (special relationship), and (2) when the governmental entity creates a special duty by promising

protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered (special duty).

**3. Games, Amusements, and Exhibitions § 6 (NCI4th); Public Officers and Employees § 35 (NCI4th)— injury to go-kart rider—negligent inspection by Department of Labor—public duty doctrine—special relationship exception inapplicable**

The Amusement Safety Device Act and rules promulgated thereunder governing the inspection of go-karts by the Department of Labor are for the protection of the general public and do not create a duty to an individual go-kart customer. Therefore, the "special relationship" exception to the public duty doctrine was inapplicable as a basis for liability by the Department of Labor in plaintiff go-kart rider's action based upon allegations that the Department inspected and passed go-karts which did not have shoulder straps as well as seat belts as required by the Administrative Code, that plaintiff operated such a go-kart with only a seat belt, and that plaintiff suffered severe abdominal injuries when the brakes failed, the go-kart struck a pole, and the seat belt tightened.

**4. Games, Amusements, and Exhibitions § 6 (NCI4th); Public Officers and Employees § 35 (NCI4th)— injury to go-kart rider—negligent inspection by Department of Labor—public duty doctrine—special duty exception inapplicable**

The "special duty" exception to the public duty doctrine cannot be the basis for liability by the Department of Labor for alleged negligent inspection of go-karts where plaintiff did not allege an actual promise by the Department of Labor to create the special duty.

Justice ORR dissenting.

Justice FRYE joins in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 125 N.C. App. 293, 480 S.E.2d 413 (1997), affirming a decision of the Industrial Commission denying defendant's motion pursuant to N.C.G.S. § 1A-1, Rules 12(b)(1) and (6) to dismiss plaintiff's claim. Heard in the Supreme Court 20 November 1997.

*MacRae, Perry, Pechmann, Williford & MacRae, by James C. MacRae, Jr., for plaintiff-appellee.*

*Michael F. Easley, Attorney General, by William H. Borden, Assistant Attorney General, for defendant-appellant.*

PARKER, Justice.

Plaintiff, by and through his guardian ad litem, commenced this negligence action against defendant, North Carolina Department of Labor, pursuant to the Tort Claims Act, N.C.G.S. §§ 143-291 to -300.1 (1993) (amended 1994). Plaintiff sought damages for injuries resulting from an accident at an amusement park in Cumberland County, North Carolina. Defendant moved, pursuant to N.C.G.S. § 1A-1, Rules 12(b)(1) and (6), to dismiss plaintiff's claim. Deputy Commissioner John A. Hedrick denied the motion. The full Commission affirmed and adopted his decision.

The Court of Appeals affirmed. The Court of Appeals held that the North Carolina Administrative Code, specifically 13 NCAC 15 .0405, which describes the duties of inspectors for the Department of Labor, imposes a duty upon defendant to inspect amusement devices to ensure compliance with the Administrative Code and that breach of this duty could give rise to an action for negligence. *Hunt v. N.C. Dep't of Labor*, 125 N.C. App. 293, 297, 480 S.E.2d 413, 416 (1997). The lower court also held that the public duty doctrine does not apply to actions brought against the State under the Tort Claims Act. *Id.* at 296, 480 S.E.2d at 415. On 5 June 1997 this Court granted defendant's petition for discretionary review.

This appeal is before us based on defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, N.C. R. Civ. P. 12(b)(1), (6);[1] thus, we treat plaintiff's factual allegations contained in his affidavit before the Industrial Commission as true. *See Cage v. Colonial Bldg. Co.*, 337 N.C. 682, 683, 448 S.E.2d 115, 116 (1994). On 28 July 1993 plaintiff was operating a go-kart, owned by Ride 'N Slide, Inc., in Fayetteville, North Carolina, when the brakes failed, causing plaintiff to hit a pole. Plaintiff suffered severe injuries to his abdominal area when his seat

---

1. Nothing in the record suggests that the Industrial Commission treated the motion as anything other than a motion under Rule 12(b)(1) and (6) or that the Commission considered depositions or other evidence in its deliberations. Accordingly, statements in any such materials are not properly before this Court and cannot be considered.

belt tightened. Tony Brewer, an elevator and amusement ride inspector for defendant North Carolina Department of Labor, had previously inspected and passed the go-karts when the seat belts were not in compliance with the rules and regulations contained in section .0400 of the North Carolina Administrative Code.

Plaintiff contends that defendant had a duty under the Amusement Device Safety Act, chapter 95, article 14B of the North Carolina General Statutes, and the rules and regulations promulgated thereunder in the Administrative Code; that defendant breached that duty by failing to inform the amusement park's manager that, pursuant to rule .0429(a)(3)(B) of the Administrative Code, shoulder straps, as well as seat belts, must be mounted on the go-karts; that defendant's breach caused plaintiff's injury; and that plaintiff's injury entitles him to damages in tort.

Plaintiff has thus alleged a common law negligence action against the State under the Tort Claims Act. The Tort Claims Act provides, in pertinent part, that

> [t]he Industrial Commission shall determine whether or not each claim arose as a result of negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of office, employment, service, agency or authority under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

N.C.G.S. § 143-291(a). To recover damages for common law negligence, a plaintiff must establish (i) a legal duty, (ii) a breach thereof, and (iii) injury proximately caused by such breach. *Tise v. Yates Constr. Co., Inc.*, 345 N.C. 456, 460, 480 S.E.2d 677, 680 (1997); *see also Petty v. Cranston Print Works Co.*, 243 N.C. 292, 298, 90 S.E.2d 717, 721 (1956).

Defendant contends that the public duty doctrine bars this action against the State; that plaintiff has, therefore, failed to state a claim upon which relief may be granted; and that the claim is subject to dismissal pursuant to Rule 12(b)(6). The public duty doctrine was adopted by this Court in *Braswell v. Braswell*, 330 N.C. 363, 370-71, 410 S.E.2d 897, 901-02 (1991). The doctrine "provides that governmental entities and their agents owe duties only to the general public, not to individuals, absent a 'special relationship' or 'special duty' between the entity and the injured party." *Stone v. N.C. Dep't of*

*Labor,* 347 N.C. 473, 477-78, 495 S.E.2d 711, 714 (1998). Defendant further contends that because plaintiff has failed to state a claim, the Industrial Commission lacks subject matter jurisdiction over defendant.

We recently examined the public duty doctrine and its applicability to claims brought under the Tort Claims Act. In *Stone* we held that "the Tort Claims Act . . . incorporat[es] the existing common law rules of negligence, including [the public duty] doctrine." *Id.* at 479, 495 S.E.2d at 715; *see also Floyd v. N.C. State Highway & Pub. Works Comm'n,* 241 N.C. 461, 464, 85 S.E.2d 703, 705 (1955), *overruled in part on other grounds by Barney v. N.C. State Highway Comm'n,* 282 N.C. 278, 284-85, 192 S.E.2d 273, 277 (1972); *McKinney v. Deneen,* 231 N.C. 540, 542, 58 S.E.2d 107, 109 (1950).

In *Stone v. N.C. Dep't of Labor,* plaintiffs brought a negligence claim against the Department of Labor and its Occupational Safety and Health Division for failure to inspect the Imperial Foods Products plant. *Stone,* 347 N.C. at 477, 495 S.E.2d at 713. A fire broke out at the plant, killing or injuring more than one hundred employees. *Id.* Plaintiffs brought suit under the Tort Claims Act arguing that defendants owed each employee a duty under N.C.G.S. § 95-4 to inspect the plant. *Id.* at 483, 495 S.E.2d at 717. In concluding that the public duty doctrine applied to plaintiffs' claims in *Stone,* we expressly found that N.C.G.S. § 95-4 imposed a duty upon defendants for the benefit of the general public, *id.*, and that "[t]he policies underlying recognition of the public duty in *Braswell* support its application here," *id.* at 481, 495 S.E.2d at 716. Accordingly, defendants did not owe a duty to each individual complainant in *Stone*; and, since the exceptions to the doctrine did not apply, defendants' motion to dismiss was improperly denied.

[1] This Court having determined in *Stone* that the public duty doctrine can apply to actions against state agencies brought under the Tort Claims Act, we must determine applicability of the public duty doctrine to this case.

The general rule is that a governmental entity acts for the benefit of the general public, not for a specific individual, and, thus, cannot be held liable for a failure to carry out its duties to an individual. *Braswell,* 330 N.C. at 370, 410 S.E.2d at 901. Without any distinct duty to any specific individual, the entity cannot be held liable. *Tise,* 345 N.C. at 460, 480 S.E.2d at 680.

A review of the Amusement Device Safety Act discloses that nowhere in the Act did the legislature impose a duty upon defendant to each go-kart customer. Pursuant to N.C.G.S. § 95-111.4, the Commissioner of Labor has promulgated rules governing the inspection of go-karts. 13 NCAC 15 .0400 (June 1992). These rules similarly do not impose any such duty. As this Court said in *Stone*, " '[A] government ought to be free to enact laws for the public protection without thereby exposing its supporting taxpayers . . . to liability for failures of omission in its attempt to enforce them. It is better to have such laws, even haphazardly enforced, than not to have them at all.' " *Stone*, 347 N.C. at 481, 495 S.E.2d at 716 (quoting *Grogan v. Commonwealth*, 577 S.W.2d 4, 6 (Ky.), *cert. denied*, 444 U.S. 835, 62 L. Ed. 2d 46 (1979)).

[2] This Court has, however, recognized two exceptions to the public duty doctrine in order "to prevent inevitable inequities to certain individuals." *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902. The exceptions exist (i) where there is a special relationship between the injured party and the governmental entity ("special relationship") and (ii) when the governmental entity creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered ("special duty").[2] *Id.* These exceptions are narrowly applied. *Id.* at 372.

[3] Plaintiff argues that the "special relationship" exception applies because the Amusement Device Safety Act and the Administrative Code created a special duty to him. As support for his position, plaintiff cites *Coleman v. Cooper*, 89 N.C. App. 188, 366 S.E.2d 2, *disc. rev. denied*, 322 N.C. 834, 371 S.E.2d 275 (1988). We note first that the Court of Appeals did not apply the public duty doctrine in *Coleman*.

---

2. What our courts have labeled the "special duty" exception to the public duty doctrine, other jurisdictions call the "special relationship" exception. *See Hamilton v. Cannon*, 267 Ga. 655, 657, 482 S.E.2d 370, 373 (1997) (stating that the "special relationship" exception exists when the municipality makes promises of an affirmative undertaking); *Yonker v. State Dep't of Social & Heath Services*, 85 Wash. App. 71, 76-77, 930 P.2d 958, 961 (1997) (labeling the situation when the governmental entity gives explicit assurances the "special relationship" exception); *Jeffrey v. W. Va. Dep't of Pub. Safety*, 198 W. Va. 609, 614, 482 S.E.2d 226, 231 (1996) (stating that the "special relationship" exception exists when there is direct contact between the governmental entity's agents and the injured party and the injured party justifiably relied on the entity's affirmative undertaking). *But see Hurd v. Woolfork*, 959 S.W.2d 578, 582 (Tenn. Ct. App. 1997) (stating that the "special duty" exception applies where there is a "special relationship" between plaintiff and the public employee that gives rise to a "special duty").

Moreover, to the extent that *Coleman* is inconsistent with the holding in this case, it is hereby disapproved.

To determine whether the "special relationship" exception applies, we compare the regulatory language at issue in this case with the language at issue in *Stone*. In *Stone* we held that the applicable statute, N.C.G.S. § 95-4 (1989), "imposes a duty upon defendants, [but] that duty is for the benefit of the public, not individual claimants as here." *Stone*, 347 N.C. at 483, 495 S.E.2d at 717. The statute " 'charged [the Commissioner of Labor] with the duty' to visit and inspect 'at reasonable hours, as often as practicable,' all of the 'factories, mercantile establishments, mills, workshops, public eating places, and commercial institutions in the State.' " *Id.* (quoting N.C.G.S. § 95-4(5)). We conclude that the language of the Administrative Code at issue in this case is analogous to that in *Stone*.

Rule 13 NCAC 15 .0405, entitled "Inspections," provides that "[a]n inspector shall inspect each amusement device at each location to determine if the device: . . . (3) has complied with the rules and regulations of this Section . . . ." Rule 13 NCAC 15 .0429(a)(3), which governs go-karts, provides:

(3) Seats, Seat Belts and Shoulder Straps. All karts shall meet one of the following requirements:

(A) The seat, back rest, and leg area shall be designed to retain the driver/occupants inside the kart in the event of a rollover or a collision at the front, rear, or side of the kart; or

(B) The Kart shall be equipped with seat belts and shoulder straps mounted in a manner that will restrain the occupant(s) in the vehicle in case of a collision or rollover. Properly mounted safety harnesses as effective as seat belts and shoulder straps may be substituted for seat belts and shoulder straps.

These rules do not explicitly prescribe a standard of conduct for this defendant as to individual go-kart customers. The Amusement Device Safety Act and the rules promulgated thereunder are for the "[p]rotection of the public from exposure to such unsafe conditions" and do not create a duty to a specific individual. N.C.G.S. § 95-111.1(b) (1989).

To hold contrary to our holding in *Stone*, in which we held that the defendants' failure to inspect did not create liability, would be tantamount to imposing liability on defendant in this case solely for

inspecting the go-karts and not discovering them to be in violation of the Code. "A showing that a [governmental entity] has undertaken to perform its duties to enforce such statutes is not sufficient, by itself, to show the creation of a special relationship with particular individual citizens." *Sinning v. Clark*, 119 N.C. App. 515, 519, 459 S.E.2d 71, 74, *disc. rev. denied*, 342 N.C. 194, 463 S.E.2d 242 (1995). If such a "special relationship" were to be found in this case, defendant would become a virtual guarantor of the safety of every go-kart subject to its inspection, thereby, "exposing it to an overwhelming burden of liability for failure to detect every code violation or defect." *Id.* at 519-20, 459 S.E.2d at 74. Thus, we hold that in order to fall within the "special relationship" exception to the public duty doctrine, plaintiff must allege a special relationship, such as that between "a state's witness or informant who has aided law enforcement officers," *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902.

**[4]** Although plaintiff does not assert that his case falls within the "special duty" exception, nonetheless, we examine this exception. To come within the "special duty" exception, plaintiff must show that an actual promise was made by defendant to create the special duty, that this promise was reasonably relied upon by plaintiff, and that plaintiff's injury was causally related to plaintiff's reliance. *Id.* In this case plaintiff has not alleged an actual promise; thus, the "special duty" exception cannot be a basis for liability. *Cf. Davis v. Messer*, 119 N.C. App. 44, 56, 457 S.E.2d 902, 910 (holding the plaintiffs' allegations that "the Town . . . promised it would provide fire-fighting assistance and protection; [that] the promised protection never arrived; and [that] plaintiffs relied upon the promise to respond to the fire as their exclusive source of aid, resulting in the complete destruction of their home," stated a claim for relief under the "special duty" exception to the public duty doctrine), *disc. rev. denied*, 341 N.C. 647, 462 S.E.2d 508 (1995).

Since the public duty doctrine applies to plaintiff's claim under the Tort Claims Act, the claim fails unless it fits into one of the two exceptions. We conclude that plaintiff's claim does not fit into either exception. For the reasons stated the Court of Appeals erred in affirming the Industrial Commission's denial of defendant's motion to dismiss. The decision of the Court of Appeals is, therefore, reversed; and the case is remanded to that court for further remand to the Industrial Commission for entry of an order of dismissal.

REVERSED AND REMANDED.

HUNT v. N.C. DEPT. OF LABOR

[348 N.C. 192 (1998)]

Justice ORR dissenting.

The practical effect of the majority opinion in this case sends a chilling message regarding the State's lack of accountability for its negligent conduct and resulting injuries to innocent third parties. Regardless of the fact that the legislature has imposed a duty on the State either directly through legislation or indirectly through administrative rule, regardless of the evidence of negligence by the State in carrying out such duties, regardless of the severity of injury to an innocent third party or parties, and regardless of the fact that the legislature has removed state immunity from suit under the Tort Claims Act, the majority holds that the public duty doctrine allows the State to escape liability for its negligence, and injured parties are thus left with no means of recovery against the State. This was clearly not the law before *Stone*, nor should it be now. *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 495 S.E.2d 711 (1998).

In my dissent in *Stone*, I concluded that the majority had incorrectly extended the public duty doctrine to protect the State from lawsuits, with the result being that the Tort Claims Act's protection of the public was seriously eroded. Suffice it to say, I am still convinced of the correctness of my dissent in *Stone*, particularly in light of the petition for rehearing and accompanying affidavits filed by the plaintiffs in *Stone*. (The petition for rehearing was denied by this Court on 2 April 1998.) However, for purposes of this dissent, I will not repeat those earlier arguments against the majority's unwarranted extension of the public duty doctrine.

The majority, relying on *Stone*, has determined in this case that the public duty doctrine applies to the State and concludes that plaintiff's claim is barred. According to the record, plaintiff, an eleven-year-old child, was seriously injured in a collision that occurred while he was riding a go-kart at the Ride 'N Slide amusement park. Plaintiff was secured in the go-kart by an improper seat belt. Tony Brewer, a North Carolina Department of Labor elevator and amusement ride inspector, had inspected the go-karts in June of 1993 within the course and scope of his employment. Brewer negligently and incorrectly informed the manager of the Ride 'N Slide that only lap belts needed to be installed on each go-kart, when in fact a three-point shoulder-type harness was required on the go-karts under the North Carolina Administrative Code. 13 NCAC 15 .0429(a)(3)(B) (May 1992). Because of this failure to inform the manager about the seatbelt requirement, the proper belts were never installed, and the

eleven-year-old rode a go-kart with only a lap belt, suffering severe internal injuries when the go-kart crashed.

Whether this evidence was sufficient to establish negligence on the part of the State and what damages, if any, plaintiff would be entitled to recover should, according to the majority, never be reached. By applying the public duty doctrine, the majority concludes that the State owed only a general duty to the public and that the Amusement Safety Act did not impose a duty upon the State for the protection of individuals, in many cases minors, who operate go-karts at these facilities. The majority thus concludes that plaintiff's claim should be dismissed because of the protection now afforded the State under the public duty doctrine.

In addition to my disagreement with the application of the public duty doctrine to this case, I find no basis for the majority's conclusion that article 14B of chapter 95 of the General Statutes, the Amusement Device Safety Act of North Carolina, imposes no legislative duty upon those who inspect go-karts. This article begins with N.C.G.S. § 95-111.1, which provides in pertinent part: "It is the intent of this Article that amusement devices shall be designed, constructed, assembled or disassembled, maintained, and operated so as to prevent injuries." N.C.G.S. § 95-111.1(c) (1985). The article concludes some eight pages later with N.C.G.S. § 95-111.18, which provides in pertinent part: "This Article and the rules and regulations promulgated thereunder shall receive a liberal construction to the end that the welfare of the people may be protected." N.C.G.S. § 95-111.18 (1985). Contained within the article is a lengthy list of powers and duties of the Commissioner of Labor, which includes the power to adopt rules and regulations for enforcement of article 14B *and* authority to inspect and test devices subject to the article. N.C.G.S. § 95-111.4 (1985). As a result, the Commissioner of Labor adopted administrative rules, including:

.0405 INSPECTIONS

An *inspector* shall inspect each amusement device at each location to determine if the device:

(1) has been soundly constructed and properly erected,

(2) has been modified to comply with any changes in safety requirements prescribed by the manufacturer,

(3) has complied with the rules and regulations of this Section, and

(4)  has in existence a policy of insurance as required by G.S. 95-111.12.

13 NCAC 15 .0405 (Aug. 1987) (emphasis added). This would certainly appear to impose a duty on the State for the specific protection of individuals operating go-karts.

Let there be no misunderstanding of the breadth and logical extension of the holdings in *Stone* and now in *Hunt*. This is not limited just to inspections of the workplace as in *Stone*, or to inspections of go-karts as in the case before us. Every device regulated by the Department of Labor requiring inspection falls within the scope of these holdings. When the State Fair comes to Raleigh or when small, independent amusement operators set up rides in communities all across North Carolina, and the State agency required by law to inspect those amusement rides is negligent and injuries to innocent third parties occur, the State is now shielded from liability by the majority's holdings.

If, as in *Stone*, there can be no claim for failing to follow the law and inspect a workplace, and if, as in *Hunt*, there can be no claim for failing to follow the law and correctly inspect an amusement ride facility, then the myriad requirements throughout the General Statutes and Administrative Code requiring various types of inspections by State officials are meaningless to innocent third parties injured by the State's negligence. Without exhausting the possibilities, one need only contemplate some of the types of inspections provided by the State. For example, regulations are in place dealing with inspections involving day-care centers, hazardous-waste facilities, nuclear energy systems, mines and quarries, meat and poultry products, and milk production, as well as sanitary and health inspections involving epidemics and other communicable diseases. The list could go on and on, and if the State negligently performs its duties, then those injured must look elsewhere for relief. The doctrine of sovereign immunity—"the King can do no wrong"—has been reimposed by judicial extension of the law. *Steelman v. City of New Bern*, 279 N.C. 589, 592, 184 S.E.2d 239, 241 (1971).

Although the two cases now decided on this issue deal with questions of negligent inspection, I find no language in the decisions limiting the application of the public duty doctrine only to those cases involving inspections by state agents. The potential ramifications of these holdings to negligent acts of the State beyond the realm of inspections would appear to be without limit.

The underlying basis of the majority decision is: A duty to all is a duty to none. According to the majority, no duty was owed to the workers who perished or were injured in the Hamlet fire, and no duty was owed to eleven-year-old Jason Hunt when he sat down in a go-kart and put on an improper seat belt. The public duty doctrine should never have been extended to the State by this Court in *Stone* and further applied in this case. I dissented then, and I dissent now.

Justice FRYE joins in this dissenting opinion.