* * * * * * * * * * *
The undersigned have reviewed the record and the prior Decision and Order filed by Deputy Commissioner Garner. The appealing party has not shown good ground to amend the Decision and Order. The Full Commission hereby AFFIRMS the decision of the Deputy Commissioner.
 * * * * * * * * * * *
Defendant's objection to the inclusion in the record of the attachment to plaintiffs' 2nd amended brief is hereby SUSTAINED.
 * * * * * * * * * * *
Based on the credible evidence of record, the undersigned makes the following:
 FINDINGS OF FACTS and CONCLUSIONS OF LAW
1. Defendant moved to dismiss plaintiffs' claims pursuant toN.C.R. Civ. P. 12(b), asserting that plaintiffs' claims should be dismissed for failure to state a claim upon which relief may be granted and because no valid claim for relief exists.
2. When a party files a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), the question for the Court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. The court must construe the complaint liberally and should not dismiss the complaint unless it appears beyond a doubt that plaintiff could not prove any set of facts to support his claim that would entitle him to relief.
3. After reviewing plaintiffs' complaints, the allegations set forth facts that support a legal theory of recovery. The question before this court is whether plaintiffs can prove any set of facts that would support a claim that would entitle them to relief. Assuming the facts set forth in the complaint to be true, the plaintiffs have met their burden.
4. The defendant moved to dismiss pursuant to the Public Duty Doctrine. This doctrine as recognized in North Carolina was adopted in Braswell v. Braswell, 330 N.C. 363 (1991). The Public Duty Doctrine was further extended to claims made under the Tort Claims Act in Stone, et al. v. North CarolinaDepartment of Labor, 347 N.C. 473 (1998). The Public Duty Doctrine precludes liability of a governmental entity and their agents for duties owed only to the general public, not to individuals, absent a "special relationship" or "special duty."See e.g., Hunt v. North Carolina Department of Labor,348 N.C. 192 (1998).
5. There is a clear dispute as to whether defendant specifically owed the plaintiffs' decedents a special duty, and whether the Public Duty Doctrine applies to the facts of this case. The plaintiffs have alleged that the North Carolina Department of Health and Human Services ("DHHS"), by and through its inspector, Ernest Dixon, owed plaintiffs' decedents a duty to properly inspect the Mitchell County Jail facility to ensure that it met all statutory requirements for operation. Plaintiffs also claim that proper inspections of the jail did not occur due to poor and/or inadequate training of Inspector Dixon. Plaintiffs have alleged that the failure to carry out these inspections properly proximately caused the decedents' deaths during a jail fire that occurred on May 3, 2002.
6. Under North Carolina statutory and administrative standards, the DHHS has responsibility related to the operation and inspection of local confinement facilities like the Mitchell County Jail. In meeting its statutory responsibility, DHHS has promulgated minimum standards for the construction and operation of local confinement facilities. Additionally, the State Building Code contains additional provisions applicable to the construction of local confinement facilities. N.C. Gen. Stat. §153A-221, Minimum Standards, states, in part, that: The Secretary [of Health and Human Services] shall develop and publish minimum standards for the operation of local confinement facilities and may from time to time develop and publish amendments to the standards. The standards shall be developed with a view to providing secure custody of prisoners and to protecting their health and welfare and providing for their human treatment.
7. N.C. Gen. Stat. § 153A-222, Inspections of LocalConfinement Facilities, states that the Department [of Health and Human Services] personnel shall visit and inspect each local confinement facility at least semi-annually. The purpose of the inspections is to investigate the conditions of confinement, employment standards for jailers and supervisory and administrative personnel of local confinement facilities as provided for in N.C. Gen. Stat. § 153-216(4), and to determine whether the facilities meet the minimum standards published pursuant to N.C. Gen. Stat. § 153A-221.
8. N.C. Gen. Stat. § 153A-223, Enforcing the MinimumStandards, provides that: If an inspection conducted pursuant to N.C. Gen. Stat. § 153A-222 discloses that the jailers and supervisory and administrative personnel of a local confinement facility do not meet the entry level employment standards established pursuant to Chapter 17C or Chapter 17E, or that a local confinement facility does not meet the minimum standards published pursuant to N.C. Gen. Stat. § 153A-221 and, in addition, if the Secretary determines that conditions in the facility jeopardize the safe custody, safety, health, or welfare of persons confined in the facility, the Secretary is to send notice to the local governing body and to the senior resident superior court judge.
9. 10 NCAC 3J. 2303, Applicability-Construction, provides: (a) North Carolina State Building Code — Jails must meet the requirements of the North Carolina Building Code in effect at the time of construction, additions, alterations, or repairs; (c) Existing jails shall continue to be governed by the existing construction standards which are now in § .3700, and the same standards shall apply to new jails which have had final working drawings approved by the branch prior to the effective date of this rule. Existing jails and/or new jails which have final working drawings approved by the branch prior to the effective date of this rule may choose to comply with any of the construction standards in § .3400 as a substitute for existing standards on the same subject on § .3700.
10. 10 NCAC 3J. 3501, Inspection, states: All jails shall be visited and inspected at least twice each year, but a jail shall be inspected more infrequently if the Department considers it necessary or if it is required by an agreement of correction pursuant to 10 NCAC 3J. 3504.
11. 10 NCAC 3J. 3504, Agreement of Correction, states, in part: (a) Before ordering corrective action or ordering the jail closed, the Secretary may direct the governing body to enter into an agreement of correction. If the Secretary chooses this option, he shall require the governing body to enter into a written agreement within 30 days after it receives notice that conditions in the jail jeopardize the safe custody, safety, health, or welfare of the inmates.
12. 10 NCAC 3J. 3702, Building Materials and ConstructionRequirements, in part, states: (a) The walls and roof shall be made of: (1) Reinforced concrete that complies with the North Carolina State Building Code or (2) Masonry that complies with the approved plans and specifications, or (3) Other materials that comply with the North Carolina State Building Code. The materials shall be non-combustible and shall have the fire-resistive ratings if required by the North Carolina State Building Code. A local confinement facility shall not be located in or attached to a building with less than fire-resistive construction, unless the confinement area is separated by an approved masonry firewall.
13. The plaintiffs are alleging that Ernest Dixon inspected the Mitchell County Jail on a semi-annual basis as part of his job as an inspector from the Jail and Detention Section of the Division of Facility Services, a subdivision of the North Carolina Department of Health and Human Services. However, the allegations are that Inspector Dixon never reviewed the fire detection system, and there is a question as to whether the building addition met applicable building codes.
14. The DHHS's Jail Inspection Protocols Policies andProcedures Manual, states in the last paragraph on page 7: Inspection tours conducted by the jail consultant shall verify security, safety, sanitation, structural, and equipment aspects for accurate recording on the official Division of Facility Services' inspection form for local confinement facilities. Each element and sub-element of the inspection form shall be accurately assessed for compliance, and those conditions of program deficiencies that are clearly not in compliance shall be appropriately marked on the inspection form.
15. On page 8 of the Manual, it states as follows: It is incumbent upon the jail consultant to observe and report any deficiency, equipment failure, inadequate life-support service, or practices which would threaten the welfare, health, safety, or security of inmates or which poses a potential for jeopardizing the safe custody, safety, health, or welfare of persons confined in the facility.
16. The plaintiffs contend that the Department of Health and Human Services, by and through its agents, employees, and/or inspectors, had a duty to inspect the safety of local jail facilities for the specific purpose of ensuring the safe custody, safety, health, and welfare of inmates, i.e., individual persons confined in the facilities. The plaintiffs contend that this duty was not for the benefit of the general public, but for individuals confined to the facilities being inspected, therefore, the State cannot claim that no duty existed at the time of the incident made the basis of this lawsuit. The undersigned agree.
17. On two previous occasions, the North Carolina Supreme Court has reviewed the potential liability of the State based upon an inspector's failure to properly carry out his duties according to statutory and administrative provisions. See, e.g., Stone, etal. v. North Carolina Department of Labor, 347 N.C. 473 (1998);Hunt v. North Carolina Department of Labor, 348 N.C. 192
(1998). In Stone, the North Carolina Supreme Court reviewed the statutory and administrative provisions to determine the extent of the duty owed and whether such duty was one to the public-at-large and/or whether any of the exceptions to the Public Duty Doctrine applied to the particular cases. In Stone,
the statutory and administrative scheme called for the inspectors to visit and inspect, at reasonable hours and as often as practicable, all of the factories, mercantile establishments, mills, workshops, public eating places, and commercial institutions in the State.
18. The language at issue in the Hunt case was similar to the language from the Stone case as set forth above. Specifically, it states that an inspector shall inspect each amusement device at each location to determine if the device has complied with the specific rules and regulations.
19. The Court in each case determined that the rules were promulgated for the protection of the public from unsafe conditions.
20. In contrast, in the case at hand, the statutory and administrative provisions for confinement facilities are more particularly articulated and the purposes of the inspections are more specifically defined than those reviewed in Stone orHunt. The statutory and administrative scheme for inspecting jails is to occur semi-annually for the specific reason of protecting the welfare and safety of individual inmates. No such provisions for the safety of mill workers or amusement devices were in place in the statutory and administrative provisions reviewed in the Hunt and Stone cases. Therefore, reviewing the statutory and administrative schemes applicable to this case that a specific duty was owed to the plaintiffs' decedents thereby precluding the application of the Public Duty Doctrine.
21. Defendant also relies on Reid v. Kaye, 885 F.2d 129
(4th Cir. 1989), and Hunt, supra, for the proposition that Chapter 153A, Art. 10 does not create a duty owed to anyone other than the general public. However, defendant's reliance of these cases is misplaced. The statutory and administrative provisions related to jail inspections are far more detailed in the requirements of inspectors than those promulgated by the Amusement Device Safety Act, as set forth in the Hunt case. Therefore, defendant's argument that the statutory and administrative provisions related to jail inspections that specifically state such activities are for the health, safety, and welfare of those individuals confined in the facilities is truly for a public purpose is without merit. The purpose of the statutes and administrative provisions is to protect those who are unable to protect themselves due to their confinement. The issues of protection covered under the inspection provisions simply have no application to the general public. Therefore, based upon the allegations set forth in the complaint and the authorities referenced by plaintiffs, the State owed a duty to inmates confined to the Mitchell County Jail. As such, the State was not acting for the general public, and the Public Duty Doctrine does not apply in this case.
22. It is the plaintiffs' position that the Public Duty Doctrine does not apply to this case. However, even if the doctrine is applicable, the exceptions to the doctrine preclude dismissal of the claims.
23. Under the facts of this case, the North Carolina statutory and administrative schemes specifically provide for a duty for the DHHS to make semi-annual inspections of local jail facilities to ensure the safety and welfare of confined inmates. The nature of the special relationship that exists is clearly evident. The State has recognized the specific need to provide protection for individuals confined and who are unable to provide for their own safety. The specific duties for inspections of local confinement facilities recognizes the special relationship between the State and inmates due to the fact of confinement and the inability of inmates to provide for themselves in terms of meals, support, or safety. Because of the confinement, inmates must rely on the State to provide all life-sustaining necessities. The State has obviously recognized this special relationship by creating the very detailed inspection process.
24. In addition to the special relationship exception, the special duty exception applies in this case. When an individual is confined, the State impliedly and/or expressly promises to provide for the needs and protection of the inmate due to the inmate's inability to provide for themselves. In this case, the promise for the inmates' safety and welfare was provided by the State through its inspection process, and that promise was not fulfilled. Inmates rely upon the State for their own safety and welfare when confined, and the reliance is justified. In this case, plaintiffs have alleged that a promise was made, relied on, but not completed. The plaintiffs have clearly alleged that a special duty existed but was not met. The plaintiffs have done all that is necessary to establish a claim sufficient to defeat a motion to dismiss.
25. The plaintiffs' amended statements clearly set forth the requirements necessary for a short and plain statement of the claims being made so that all parties have an understanding of what is being claimed as required by the North Carolina Rules ofCivil Procedure.
26. Additionally, the analogy that the defendant's attempt to make between the regulatory language of the statutes in theHunt and Stone cases is simply not applicable to this case. Therefore, assuming the Public Duty Doctrine applying to this case, the statutory scheme for jail inspections is very specific. The statutory scheme set forth in § 153A, Art. 10 creates a special relationship and special duty for the care and safety of individual inmates.
27. Defendant asserts that it is not liable in this matter, and the claims should be dismissed because Inspector Ernest Dixon is a state officer, as opposed to a mere employee and thereby is entitled to sovereign immunity. However, this allegation is a question of fact and one that is better addressed by a Motion for Summary Judgment, as opposed to a Motion to Dismiss.
28. Defendants further assert that any allegations regarding Inspector Ernest Dixon are conclusory and unsupportable. Again, this is a question of fact and not something to be addressed in a Motion to Dismiss.
 * * * * * * * * * * *
Based on the foregoing Findings of Facts and Conclusions of Law, the undersigned enters the following:
 ORDER
1. The Defendant's Motion to Dismiss is hereby DENIED.
2. These cases shall be placed back on the active hearing docket to be heard on the merits. A calendar shall be forthcoming setting forth the time and place for hearing.
3. Defendants shall pay the costs of this appeal.
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ THOMAS JEFFERSON BOLCH COMMISSIONER