MULTIPLE CLAIMANTS v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[361 N.C. 372 (2007)]

MULTIPLE CLAIMANTS v. NORTH CAROLINA DEPARTMENT OF HEALTH AND
HUMAN SERVICES, DIVISION OF FACILITY SERVICES, JAILS AND DETEN-
TION SERVICES

No. 183A06

(Filed 28 June 2007)

**Tort Claims Act— jail fire—negligence action—public duty
doctrine—special relationship exception—inmates**

The special relationship exception to the public duty doc-
trine allowed a negligence action to proceed against the State
where the plaintiffs are an inmate injured in a jail fire and the
estates of others who died in the fire. A special relationship
exists because DHHS has a statutory duty to inspect jails to
ensure compliance with minimum fire safety standards, a duty
which arises from concern for the health and safety of particular
individuals (the inmates). The special relationship also applied
because of the inmates' inability to care for themselves. Although
the county has the primary responsibility for the health and
safety of the inmates, the General Assembly has determined that
the State must play a role in establishing and enforcing minimum
standards to ensure the safety of all inmates.

Chief Justice PARKER dissenting.

Justice BRADY joins in this dissenting opinion.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a
divided panel of the Court of Appeals, 176 N.C. App. 278, 626 S.E.2d
666 (2006), affirming an order entered by the North Carolina
Industrial Commission on 19 March 2004. Heard in the Supreme
Court 21 November 2006.

*Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., by
Benjamin E. Baker, Jr., for plaintiff-appellees.*

*Roy Cooper, Attorney General, by Amar Majmundar, Special
Deputy Attorney General, for defendant-appellant.*

TIMMONS-GOODSON, Justice.

At the heart of this case is a fire at the Mitchell County jail that
resulted in injury and loss of life. The question before us concerns
the application of the public duty doctrine to the statutorily-imposed

duty of the Department of Health and Human Services ("DHHS" or "defendant") to inspect local confinement facilities. Because we conclude that the special relationship exception to the public duty doctrine applies, we hold that plaintiffs may pursue their negligence claims against DHHS.

A fire at the Mitchell County jail on 3 May 2002 claimed the lives of Jason Jack Boston, Mark Halen Thomas, Jesse Allen Davis, and Danny Mark Johnson and seriously injured O.M. Ledford, Jr. Plaintiffs in the instant case are Mr. Ledford and the administrators of the decedents' estates.

Plaintiffs filed individual claims under the Tort Claims Act, Article 31 of N.C.G.S. Chapter 143, and on 27 August 2003, the Industrial Commission ("the Commission") consolidated the claims with the agreement of all parties. On 21 July 2003, before all claims were consolidated, Deputy Commissioner Edward Garner, Jr. denied defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim, finding that the public duty doctrine did not apply.[1] On appeal, the Commission affirmed the decision of the Deputy Commissioner. The Court of Appeals heard the interlocutory appeal after deciding a substantial right was involved and held, in a divided opinion, that the Commission properly denied defendant's motion to dismiss because the public duty doctrine did not apply and, alternatively, the special relationship exception to the doctrine applied.

Because we are reviewing the Commission's denial of defendant's motion to dismiss for failure to state a claim, we must treat the factual allegations in plaintiffs' affidavits of claim as true. *Hunt v. N.C. Dep't of Labor*, 348 N.C. 192, 194, 499 S.E.2d 747, 748 (1998) (citing *Cage v. Colonial Bldg. Co. of Raleigh*, 337 N.C. 682, 683, 448 S.E.2d 115, 116 (1994)). Plaintiffs allege that DHHS and Ernest Dixon, a DHHS employee, were responsible for inspecting the Mitchell County jail facility "to ensure compliance with certain regulations and to ensure that all fire safety devices and procedures were in good working order." Plaintiffs allege that defendant and Dixon "were negligent and/or wanton in their duties" and that Mr. Ledford's injuries and the deaths of decedents were "a direct proximate result of said conduct." Further, plaintiffs allege that "[t]he State also failed to properly train [Dixon] to perform the special duties of inspecting county jails."

---

1. In the same motion, defendant also sought to dismiss plaintiffs' claims "on the basis of the sovereign immunity enjoyed by the defendant pursuant to N.C. R. Civ. P. 12(b)(1) and 12(b)(2)." Defendant's claim of sovereign immunity rests on the applicability of the public duty doctrine to the instant case.

MULTIPLE CLAIMANTS v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[361 N.C. 372 (2007)]

At about the same time that defendant filed a motion to dismiss based on the public duty doctrine, plaintiffs amended their affidavits of claim to also allege that a special relationship existed between defendant and the injured and deceased inmates and that defendant had a special duty to them. Specifically, plaintiffs allege that because the injured and deceased inmates were confined and unable to protect themselves, "a special relationship arose between the aforementioned department and individual to fulfill the duties imposed under the law to ensure that the decedent, as a confined individual, would be protected in the event of a fire." Plaintiffs also allege that "the State promised it would inspect county jails to ensure the protection of inmates in the event of fires." Finally, plaintiffs contend that "[t]he duties described hereinabove were not for the benefit of the public at large, but for the benefit of the specific individuals confined in the subject jail."

The issue before us is whether the public duty doctrine bars plaintiffs' negligence claims against DHHS. Because plaintiffs allege facts sufficient to support the determination that a special relationship exists between the inmates and DHHS, we hold that the special relationship exception applies, and plaintiffs' claims are not barred by the public duty doctrine.

The public duty doctrine, which this Court first adopted in *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991), provides that "a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals." *Id.* at 370, 410 S.E.2d at 901. There are two exceptions to the doctrine: "(1) where there is a special relationship between the injured party and the police," and "(2) 'when a municipality, through its police officers, creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered.' " *Id.* at 371, 410 S.E.2d at 902 (quoting *Coleman v. Cooper*, 89 N.C. App. 188, 194, 366 S.E.2d 2, 6, *disc. rev. denied*, 322 N.C. 834, 371 S.E.2d 275 (1988), *overruled in part on other grounds by Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997)). The purpose of the doctrine, as noted in *Braswell*, is to respect the limited resources of law enforcement agencies by relieving them of liability for failure to prevent every criminal act. *Id.* at 370-71, 410 S.E.2d at 901.

In *Stone v. North Carolina Department of Labor*, this Court expanded the application of the public duty doctrine to a state agency

conducting a governmental function other than law enforcement. 347 N.C. 473, 480-81, 495 S.E.2d 711, 715-16, *cert. denied*, 525 U.S. 1016 (1998). There, the Court noted, "Just as we recognized the limited resources of law enforcement in *Braswell*, we recognize the limited resources of [the state agency] here." *Id.* at 481, 495 S.E.2d at 716.

The claims in *Stone* arose out of a deadly fire at the Imperial Foods Products chicken plant in Hamlet, North Carolina. 347 N.C. at 477, 495 S.E.2d at 713. After the fire, it was determined that conditions in the plant violated numerous provisions of the Occupational Safety and Health Act of North Carolina. *Id.* For example, building exits were blocked and the fire suppression system was inadequate. *Id.* Injured employees and the personal representatives of deceased employees filed suit against the North Carolina Department of Labor for failure to inspect the plant. *Id.* The Court concluded that the legislature's establishment of the Occupational Safety and Health Division of the Department of Labor did not impose "a duty upon this agency to each *individual* worker in North Carolina," but rather imposed a duty to protect the safety of the general public. 347 N.C. at 482-83, 495 S.E.2d at 716-17. The Court noted that Chapter 95 of the North Carolina General Statutes does not "authorize a private, individual right of action against the State. . . . Rather, the most the legislature intended was that the Division prescribe safety standards and secure some reasonable compliance through spot-check inspections made 'as often as practicable.' " *Id.* at 482, 495 S.E.2d at 716 (quoting N.C.G.S. § 95-4(5) (1996)). Because the plaintiffs did not allege facts establishing the existence of a special relationship or a special duty, those claims failed. *Id.* at 483, 495 S.E.2d at 717. The holding in *Stone* was confined to "this limited new context, not heretofore confronted by this Court." *Id.*

In *Hunt*, this Court relied on *Stone* to hold that the public duty doctrine barred claims based on the Department of Labor's negligent inspection of go-karts. 348 N.C. at 199, 499 S.E.2d at 751. The plaintiff in *Hunt* was operating a go-kart "when the brakes failed, causing [him] to hit a pole." *Id.* at 194, 499 S.E.2d at 748. The plaintiff suffered severe injuries to his abdominal area from the tightening of his lap belt. *Id.* at 194-95, 499 S.E.2d at 748. According to a rule promulgated by the Department of Labor, go-kart seat belts must include shoulder straps. 13 NCAC 15 .0429(a)(3)(B) (June 2006). The plaintiff alleged that "an elevator and amusement ride inspector for defendant North Carolina Department of Labor[] had previously inspected and passed the go-karts [in question] when the seat belts were not in compliance

with the . . . Administrative Code." 348 N.C. at 195, 499 S.E.2d at 748. Plaintiff, by and through his guardian ad litem, contended that the Department's negligent inspection caused the plaintiff's injury. *Id.* at 195, 499 S.E.2d at 748-49. The Court concluded that the Amusement Device Safety Act, N.C.G.S. §§ 95-111.1 to -111.18, did not "impose a duty upon defendant to each go-kart customer." *Id.* at 197, 499 S.E.2d at 750.

The Court also considered whether the special relationship exception to the public duty doctrine applied to the facts of *Hunt.* While the Court in *Hunt* ultimately concluded that the special relationship exception did not apply, its analysis of the exception is instructive:

> To determine whether the "special relationship" exception applies, we compare the regulatory language at issue in this case with the language at issue in *Stone.* In *Stone* we held that the applicable statute [requiring the Department of Labor to inspect factories] "imposes a duty upon defendants, [but] that duty is for the benefit of the public". . . . We conclude that the language of the Administrative Code at issue in this case is analogous to that in *Stone.*

*Id.* at 198, 499 S.E.2d at 750 (citations omitted) (quoting *Stone,* 347 N.C. at 483, 495 S.E.2d at 717 (alternation in original)). After reviewing both the rules governing the inspection of go-karts and the rules setting standards for go-kart design and safety features, the Court noted that the rules did not "explicitly prescribe a standard of conduct for this defendant as to individual go-kart customers." *Id.* at 198, 499 S.E.2d at 750-51. Thus, *Hunt* instructs us to assess whether the language of the relevant statutes and regulations clearly mandates a standard of conduct owed by an agency to the complainant.

This Court has not previously decided a case in which the special relationship exception to the doctrine applies. As an initial matter, we note that N.C.G.S. § 153A-216 describes, in part, the relevant legislative policy: "Local confinement facilities should provide secure custody of persons confined therein in order to protect the community and should be operated so as to protect the health and welfare of prisoners and to provide for their humane treatment." N.C.G.S. § 153A-216(1) (2005). Because the operation of safe jails benefits the general public, the public duty doctrine would generally preclude claims asserted by persons in custody absent an exception. Here, plaintiffs argue the special relationship exception applies. As noted

above, the exception exists "where there is a special relationship between the injured party and the governmental entity." *Id.* at 197, 499 S.E.2d at 750. While this Court has cited the special relationship created in the context of "a state's witness or informant who has aided law enforcement officers" as an example of when the exception might apply, *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902, the Court has also recognized that the exception may apply in the context of a duty established by statute for the benefit of particular individuals. *See Myers v. McGrady*, 360 N.C. 460, 469, 628 S.E.2d 761, 767 (2006); *Hunt*, 348 N.C. at 197-99, 499 S.E.2d at 750-51; *see also* 57 Am. Jur. 2d *Municipal, County, School, and State Tort Liability* § 85, at 116-17 (2001) (noting that the special relationship exception applies in cases "concerning a violation of a duty commanded by a statute enacted for the special benefit of particular individuals"). Specifically, this Court recognized in *Myers* that "statutes which create a special duty or specific obligation to a particular class of individuals" might merit different treatment than statutes that protect the general public. 360 N.C. at 469, 628 S.E.2d at 767.

The regulatory language at issue in the instant case is distinguishable from that at issue in *Hunt* and *Stone*. Here, the relevant statutes and regulations establish that defendant's duty to inspect is to a particular class of individuals. The General Assembly has mandated that the Department of Health and Human Services:

> Visit and inspect local confinement facilities; advise the sheriff, jailer, governing board, and other appropriate officials as to deficiencies and recommend improvements; and submit written reports on the inspections to appropriate local officials.

N.C.G.S. § 153A-220(3) (2005). The specific inspections required by statute are as follows:

> Department personnel shall visit and inspect each local confinement facility at least semiannually. The purpose of the inspections is to investigate *the conditions of confinement, the treatment of prisoners*, the maintenance of entry level employment standards for jailers and supervisory and administrative personnel of local confinement facilities as provided for in G.S. 153A-216(4), and *to determine whether the facilities meet the minimum standards published pursuant to G.S. 153A-221*. The inspector shall make a written report of each inspection and submit it within 30 days after the day the inspection is completed to the governing body and other local officials responsible for the

facility. The report shall specify each way in which the facility does not meet the minimum standards.

*Id.* § 153A-222 (2005) (emphasis added).

Importantly, the minimum standards that are the subject of the mandated inspections "shall be developed with a view to providing secure custody of prisoners and *to protecting their health and welfare and providing for their humane treatment.*" *Id.* § 153A-221(a) (2005) (emphasis added). The regulations detailing the minimum standards for local confinement facilities also focus on the safety, health, and welfare of inmates held in local confinement facilities. If an inspection reveals noncompliance with the standards, the inspector "shall submit to the Secretary [of DHHS] a written description of the conditions that caused noncompliance and a preliminary determination of whether those conditions jeopardize the safe custody, safety, health or welfare of the inmates confined in the jail." 10A NCAC 14J .1302(c) (June 2006). Within thirty days after receiving the report, the Secretary "shall determine whether conditions in the jail jeopardize the safe custody, safety, health or welfare of its inmates." *Id.* at .1303(a) (June 2006). If the confinement facility is not in compliance with standards regarding the "fire plan" and "fire equipment," among other things, the Secretary's determination is *not discretionary. Id.* at .1303(c)(2), (3) (June 2006). Specifically, "the Secretary shall determine that [such] noncompliance . . . jeopardizes the safe custody, safety, health or welfare of inmates confined in the jail." *Id.* Upon making such a determination, the Secretary "shall notify the local officials responsible for the jail" and "shall order corrective action, order the jail closed, or enter into an agreement of correction with local officials." *Id.* at .1303(d) (June 2006). It is well established that "the word 'shall' is generally imperative or mandatory." *State v. Johnson*, 298 N.C. 355, 361, 259 S.E.2d 752, 757 (1979); *accord State Farm Mut. Auto. Ins. Co. v. Fortin*, 350 N.C. 264, 269, 513 S.E.2d 782, 784-85 (1999); *Pearson v. Nationwide Mut. Ins. Co.*, 325 N.C. 246, 255, 382 S.E.2d 745, 749 (1989). Thus, a special relationship exists between DHHS and the inmates because DHHS has a statutory duty to inspect jails to ensure their compliance with minimum standards for fire safety. The duty arises out of concern for the health and welfare of particular individuals—here, the inmates.[2]

2. We are not alone in holding that the special relationship exception to the public duty doctrine may apply in cases involving statutorily-imposed duties that benefit a particular class of individuals. *See, e.g., Wilson v. Nepstad*, 282 N.W.2d 664, 667 (Iowa 1979) ("Duty can be created by statute if the legislature purposed or intended to protect a class of persons to which the victim belongs against a particular harm which the

MULTIPLE CLAIMANTS v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[361 N.C. 372 (2007)]

The special relationship exception also applies to the facts of the instant case because of the relationship between the State and inmates by reason of the inmates' inability to care for themselves. This special relationship has been recognized by both this Court and the United States Supreme Court. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (" '[I]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.' " (quoting *Spicer v. Williamson*, 191 N.C. 487, 490, 132 S.E. 291, 293 (1926))); *Medley v. N.C. Dep't of Corr.*, 330 N.C. 837, 842, 412 S.E.2d 654, 657-58 (1992) (same). Inmates in custody necessarily have limited freedom to provide for themselves or to protect themselves from external dangers such as fire. They cannot ensure that the facility in which they are confined contains functional safety devices and procedures to deal with an emergency. Defendant argues that these cases are inapposite because in each of them, the inmates were in the custody of the State rather than the county. While defendant is perhaps correct that Mitchell County was primarily responsible for the health and safety of the inmates, the General Assembly has determined that the State must also play a role in establishing and enforcing statewide minimum standards to ensure the safety of all inmates.

Because plaintiffs have properly alleged facts that establish the existence of a special relationship between DHHS and the inmates, we hold that the special relationship exception to the public duty doctrine applies in the instant case. Therefore, plaintiffs are not barred from bringing their negligence claims against DHHS. For the foregoing reasons, the Court of Appeals decision affirming the Industrial Commission's order denying defendant's motion to dismiss is modified and affirmed.

MODIFIED AND AFFIRMED.

victim has suffered." (citations omitted)); *Cracraft v. City of St. Louis Park*, 279 N.W.2d 80, 806 (Minn. 1979) ("A duty of care arises only when there are additional indicia that the municipality has undertaken the responsibility of not only protecting itself, but also undertaken the responsibility of protecting a particular class of persons from the risks associated with fire code violations."); *McCorkell v. City of Northfield*, 266 Minn. 267, 270-71, 123 N.W.2d 367, 370-71 (1963) (finding that statutes requiring that certain activities be undertaken for the protection of inmates' health and safety established a duty sufficient to support plaintiff's cause of action against the city for negligence after the prisoner died from asphyxiation caused by a smoldering fire in an unattended jail); *Halvorson v. Dahl*, 89 Wash. 2d 673, 676, 574 P.2d 1190, 1192 (1978) ("Liability can be founded upon a municipal code if that code by its terms evidences a clear intent to identify and protect a particular and circumscribed class of persons." (citations omitted)).

Chief Justice PARKER dissenting.

In my view, based on *Stone v. North Carolina Department of Labor*, 347 N.C. 473, 495 S.E.2d 711, *cert. denied*, 525 U.S. 1016, 142 L. Ed. 2d 449 (1998), and *Hunt v. North Carolina Department of Labor*, 348 N.C. 192, 499 S.E.2d 747 (1998), plaintiffs' action is barred by the public duty doctrine.

In *Stone*, this Court noted that under the Tort Claims Act, "the State is liable *only* under circumstances in which a private person would be." 347 N.C. at 478, 495 S.E.2d at 714 (citing N.C.G.S. § 143-291). The Court then stated:

> Private persons do not possess public duties. Only governmental entities possess authority to enact and enforce laws for the protection of the public. If the State were held liable for performing or failing to perform an obligation to the public at large, the State would have liability when a private person could *not*. The public duty doctrine, by barring negligence actions against a governmental entity absent a "special relationship" or a "special duty" to a particular individual, serves the legislature's express intention to permit liability against the State only when a private person could be liable.

*Id.* at 478-79, 495 S.E.2d at 714 (citations omitted). The operation of a local confinement center is a public duty undertaken by government. *See* N.C.G.S. §§ 153A-216, -218 (2005).

Moreover, this action is not within the purview of either of the two exceptions to the public duty doctrine recognized by this Court in *Braswell v. Braswell* in that neither a "special relationship" nor a "special duty" exists between the governmental entity and the injured party. 330 N.C. 363, 371, 410 S.E.2d 897, 902 (1991).

Chapter 153A of the General Statutes, entitled "Counties," sets forth a county's functions and duties. The primary responsibility for local confinement centers rests with the county. N.C.G.S. § 153A-218. Section 153A-218 provides that the county may "establish, acquire, erect, repair, maintain, and operate local confinement facilities." *Id.* While the General Assembly contemplated a special relationship between Mitchell County and its own inmates, no language in Chapter 153A suggests that the State had a special relationship with Mitchell County's inmates.

As noted by the majority, the legislative policy described in section 153A-216(1) provides that local confinement facilities should be

operated to protect the community as well as the health and welfare of prisoners. N.C.G.S. § 153A-216(1). However, an analysis of the plain language of other subsections of section 153A-216 reveals that the General Assembly intended that the State should provide minimum statewide standards "to guide and assist local governments" in establishing confinement facilities and in developing programs for humane treatment of prisoners and their rehabilitation, *id.* § 153A-216(2), and "should provide" limited services to local officials for the maintenance and operation of the county's confinement facilities through "inspection, consultation, technical assistance, and other appropriate services," *id.* § 153A-216(3).

The majority relies on three other statutes in Chapter 153A to hold that the special relationship exception applies in this case. Specifically, the majority focuses on sections 153A-220, 153A-221, and 153A-222. Section 153A-220 not only fails to identify inmates as a special class of individuals but makes no reference to inmates whatsoever. The language of N.C.G.S. § 153A-220, namely, to "[c]onsult with," "provide technical assistance," "[v]isit and inspect," "advise," "recommend," and "[r]eview," manifests the General Assembly's intent that the State merely advise and assist a county in the county's duty to ensure the security of the confinement center and the safe custody and care of its inmates. *Id.* § 153A-220 (2005).

Similarly, N.C.G.S. § 153A-221 only requires the State to "develop and publish minimum standards for the operation of local confinement facilities." *Id.* § 153A-221 (2005). These standards adopted pursuant to section 153A-221 direct the county's responsibility with regard to the facility and inmates in its custody. Under N.C.G.S. § 153A-222, the State inspector is to report to local officials who are responsible for ensuring that the local confinement facility is in conformity with the standards established pursuant to section 153A-221. Section 153A-222 also references N.C.G.S. § 153A-216(4), which does not address inmate safety but deals with employment standards and qualifications for personnel at local confinement facilities.

Alleging that a governmental entity has merely undertaken to perform its duties to enforce a statute " 'is not sufficient, by itself, to show the creation of a special relationship with particular individual citizens.' " *Hunt*, 348 N.C. at 199, 499 S.E.2d at 751 (quoting *Sinning v. Clark*, 119 N.C. App. 515, 519, 459 S.E.2d 71, 74, *disc. rev. denied*, 342 N.C. 194, 463 S.E.2d 242 (1995)). Such an exception is to be "narrowly construed and applied." *Stone*, 347 N.C. at 482-83, 495 S.E.2d at 717 (citing *Braswell*, 330 N.C. at 372, 410 S.E.2d at 902, and *Sinning*,

119 N.C. App. at 519, 459 S.E.2d at 74). The statutes under Chapter 153A pertaining to confinement centers prescribe the State's limited advisory and educational role in assisting a local government in its maintenance and operation of a secure and safe public jail. None of the statutes can reasonably be construed to establish a "special relationship," giving rise to an individual right to recovery, between the State and Mitchell County's inmates. By enacting these statutes utilizing the resources of state government to assist local governments in this manner, the legislature did not intend to make the State "a virtual guarantor" of the safety of every confinement facility subject to its inspection, thereby, " 'exposing it to an overwhelming burden of liability' " for the alleged failure to prevent the county's alleged negligence in the care, custody and maintenance of its confinement facility. *Hunt*, 348 N.C. at 199, 499 S.E.2d at 751 (quoting *Sinning*, 119 N.C. App. at 519-20, 459 S.E.2d at 74).

While statutory language is a useful guide to determine the existence of a "special relationship," the "special duty" exception exists only when the claimant shows that an actual promise was made by a State agent. *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902. Plaintiffs have not alleged such a special duty.

For the foregoing reasons, I respectfully dissent.

Justice BRADY joins in this dissenting opinion.