*********
The Full Commission reviewed the Order of the Deputy Commissioner, based upon the record of the proceedings before him, as well as the briefs and the oral arguments before the Full Commission. The appealing party did show good grounds to reconsider the ruling of the Deputy Commissioner in this matter. Having reconsidered the proceedings of record, the Full Commission hereby reverses the Deputy Commissioner's Order, and enters the following Order.
 *********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 2 
1. Plaintiffs filed an Affidavit for damages under the North Carolina Tort Claims Act alleging negligence on the part of Ms. Kim Hemphill, a probation/parole officer acting as an agent of Defendant. Defendant filed a Motion for Summary Judgment, based upon the public duty doctrine.
2. In February 2003, Ms. Hemphill was a probation/parole officer in McDowell County, North Carolina. On February 12, 2003, Ms. Hemphill was supervising Mr. James Oakes, who was on probation following convictions for indecent exposure and simple assault.
3. On February 14, 2003, Ms. Hemphill met with Mr. Oakes in her office and learned that he was staying at Gibbs Motel with a Mr. Ronald Rogers. When Ms. Hemphill learned that Mr. Rogers was also on probation, she drove Mr. Oakes to Gibbs Motel to retrieve his belongings.
4. Upon returning to her office, Ms. Hemphill undertook to assist Mr. Oakes in finding alternative living arrangements. She tried several times to call Mr. Oakes' mother, but she could not reach her. She also contacted a shelter, which refused to accept Mr. Oakes, due to previous violations of shelter rules.
5. When Mr. Oakes indicated that he could probably stay with Plaintiffs and Mr. David Ledford, Ms. Hemphill drove Mr. Oakes to Old Fort, North Carolina to find the Blaylock/Ledford home. When they arrived in Old Fort, Ms. Hemphill called Plaintiff Blaylock at work and asked her if Mr. Oakes could stay with her. Plaintiff Blaylock advised her that she would have to talk with Mr. Ledford.
6. Ms. Hemphill then drove to the Blaylock/Ledford house and spoke with Mr. Ledford. Ms. Hemphill told Mr. Ledford that if it was all right with him, it was all right with *Page 3 
Plaintiff Blaylock to allow Mr. Oakes to reside in their home. Mr. Ledford agreed to allow Mr. Oakes to reside at their home.
7. Thereafter, Ms. Hemphill did nothing else to determine whether it was appropriate for Mr. Oakes to reside in the Blaylock/Ledford home.
8. On or about February 16, 2003, Mr. Oakes sexually assaulted Plaintiff Brittany Ledford, age three (3), and Plaintiff Heather Ledford, age five (5), in their bedroom at the Blaylock/Ledford home.
9. When Ms. Hemphill placed Mr. Oakes in the Blaylock/Ledford home, she knew that pre-school-aged children resided in the home. She also knew of Mr. Oakes' convictions for indecent exposure and assault on a minor, that he was bipolar and schizophrenic, and that he had a bad temper, as well as problems controlling his anger.
10. Following the sexual assaults, Ms. Barbara Braswell, who was investigating the case on behalf of the McDowell County Department of Social Services, interviewed Ms. Hemphill. Ms. Hemphill admitted to Ms. Braswell that she knew that Mr. Oakes "had a past."
11. In the mid 1990's, Mr. Oakes participated in a program at Foothills Mental Health, where the staff there identified him as a sexual offender. Mr. Oakes' status as a sexual offender was common knowledge amongst McDowell County agencies, including the McDowell County Department of Social Services, Foothills Mental Health, and the McDowell County Sheriff's Department.
12. Prior to February 14, 2003, in her capacity as a probation/parole officer, Ms. Hemphill placed another sex offender in a home with children. When the Department of Social Services learned of this placement, it took action to have the offender removed. *Page 4 
13. Ms. Hemphill knew, or had reason to know, that the placement of Mr. Oakes in a home where pre-school-aged minor children resided created an environment injurious to the welfare of the minor children.
14. Plaintiffs contend that Defendant, through its agent and employee, Ms. Hemphill, failed to use reasonable care when it placed Mr. Oakes in the home of Plaintiffs, when it knew or should have known that Mr. Oakes posed a substantial risk of harm to the pre-school-aged minor children in the Blaylock/Ledford home.
 *********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In Braswell v. Braswell, the North Carolina Supreme Court adopted the common law public duty doctrine, stating:
 The general common law rule, known as the public duty doctrine, is that a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals. This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act. Braswell v. Braswell, 330 N.C. 363, 370-371, 410 S.E.2d 897, 901 (1991).
2. In Humphries v. N.C. Dep't of Corrections, 124 N.C. App. 545,479 S.E.2d 27 (1996), the North Carolina Court of Appeals applied the public duty doctrine to state law enforcement agencies, based upon facts similar in nature to the facts in Braswell. In 1998, the North Carolina Supreme Court extended the public duty doctrine beyond the law enforcement context to claims based upon certain other conduct of state agencies brought under the North Carolina Tort Claims Act. See,Stone v. N.C. Dep't of Labor, 347 N.C. 473, 495 S.E.2d 711 *Page 5 
(1998). In Hunt v. N.C. Dep't of Labor, the North Carolina Court of Appeals discussed whether the special relationship exception to the public duty doctrine applied. The Court determined that the rules governing inspection and the standards for design of go-carts did not explicitly prescribe a standard of conduct for the North Carolina Department of Labor as to individual go-cart customers; therefore, the special relationship exception did not apply, and the public duty doctrine barred the plaintiff's claim. Hunt v N.C. Dep't of Labor348 N.C. 192, 499 S.E.2d 747 (1998).
3. The North Carolina Supreme Court in Lovelace v. City ofShelby, 351 N.C. 458, 526 S.E.2d 652 (2000) subsequently held that the public duty doctrine is limited to the facts of Braswell, and therefore, only applies to law enforcement officials and to agencies when they are exercising their general duty to protect the public. Id. at 461, 654.
4. Consistent with the underlying public policy of the public duty doctrine, both Braswell and Humphries involve alleged liability based upon a failure to act which could have prevented harm. InBraswell, the plaintiff alleged that the Sheriff failed to protect a wife who received threats from her husband. Braswell at 367-370, 900-901. In Humphries, the plaintiff alleged that a probation/parole officer failed to properly supervise a probationer who subsequently escaped house arrest and violently assaulted two (2) victims.Humphries at 546-547, 27-28. The allegations of both cases implicate the allocation of agency resources and personnel; neither case involved an affirmative action on the part of the agency which resulted in harm and/or which created an environment for harm where one did not previously exist. Braswell involved a domestic situation where a husband previously harmed his wife, and threatened to do so again.Humphries involved violent assaults against two (2) victims previously unknown to the defendant agency. The common thread running through these cases, and the application of the public duty doctrine, is the right of the agency to exercise discretion in allocating its limited resources. *Page 6 
5. In the present case, the affirmative actions of Defendant's agent and employee, Ms. Hemphill, directly resulted in the harm caused to the minor Plaintiffs. The facts of this case do not arise from Defendant's failure to make a discretionary allocation of agency resources or of agency personnel. See, Braswell, 330 N.C. 363, 410 S.E.2d 897 (1991);Humprhies, 124 N.C. App. 545, 479 S.E.2d 27 (1996). In fact, Ms. Hemphill, in her discretion, specifically undertook to place Mr. Oakes in the minor Plaintiffs' home. Once removed from the realm of the discretionary, Ms. Hemphill's actions became like any other ministerial act where she and the agency for which she worked would be subject to liability for her failure to use reasonable care. Thus, the Full Commission declines to apply the public duty doctrine as a bar to Plaintiffs' claims in the present case, as the forecast of evidence in this case does not parallel the factual predicates established inBraswell and Humphries. Id.
6. Even if the public duty doctrine applies, Defendant is not entitled to judgment in its favor as a matter of law, because there is a genuine issue as to whether this case fits within the "special relationship" exception to the public duty doctrine. When Ms. Hemphill placed Mr. Oakes in the home with the minor children herein, she caused these children to be in an environment injurious to their welfare, thereby causing the minor children to immediately fit within the definition of neglected children under N.C. Gen. Stat. § 7B-101 (2007). As a law enforcement officer, Ms. Hemphill knew, or should have known, that she created a situation obligating her by statute to report the neglect and the potential for abuse to the Department of Social Services under N.C. Gen. Stat. § 7B-301 (2007). This duty to report is created by statute to benefit and to protect minor children like Plaintiffs, herein, who are incapable of protecting themselves. By virtue of N.C. Gen. Stat. §§ 7B-101 and 7B-301, a special duty or specific obligation is created between Defendant's agent and the minor children, herein. These minor *Page 7 
children are part of the class of persons the legislature intended to protect in enacting Chapter 7B, and specifically sections 7B-101 and7B-301. Ms. Hemphill, by virtue of the position she held, arguably possessed superior knowledge to that of the average individual of the harm to which she was exposing these pre-school-aged children. Because these statutes prescribe a standard of conduct for individuals, including Defendant's agent, acting within the course and scope of her employment, and because these statutes are specifically designed to protect specific individuals, including the minor children, herein, the special relationship exception to the public duty doctrine applies. Therefore, the public duty doctrine is not a bar to Plaintiffs' claims.Multiple Claimants v. North Carolina Dep't. of Health and HumanServices, Div. of Facility Services, 361 N.C. 372, 646 S.E.2d 356
(2007).
 *********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 ORDER
Defendant's Motion for Summary Judgment, based upon the public duty doctrine, is DENIED. Plaintiffs' claims for benefits under the North Carolina Tort Claims Act are hereby REMANDED to Chief Deputy Commissioner Stephen T. Gheen for assignment to a Deputy Commissioner for a full evidentiary hearing.
In the discretion of the Full Commission and in light of the recent decision of the Supreme Court in Multiple Claimants, Plaintiffs are granted leave to amend their Claim for Damages Under the Tort Claims Act (if they deem it necessary) to plead with more particularity the "special relationship" exception to the public duty doctrine.Id.
 Defendant shall pay the costs. *Page 8 
This __ day of August 2008.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ BUCK LATTIMORE COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1