IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1085

 Filed: 16 July 2019

Orange County, No. 14 CVD 1289

MATTHEW JASON ROYBAL, Plaintiff

 v.

CHRISTY ANNE RAULLI, Defendant.

 Appeal by plaintiff from order entered 8 October 2018 by Judge Samantha

Cabe in District Court, Orange County. Heard in the Court of Appeals 8 May 2019.

 Browner Law, PLLC, by Jeremy Todd Browner, for plaintiff-appellant.

 Ellis Family Law, P.L.L.C., by Autumn D. Osbourne, for defendant-appellee.

 STROUD, Judge.

 Matthew Roybal appeals from an order addressing several issues of first

impression for this Court arising from the Uniform Deployed Parents Custody and

Visitation Act (“UDPCVA”). N.C. Gen. Stat. §§ 50A-350-396 (2017). Father’s motion

and the trial court’s order dealt with all three aspects of custodial responsibility

recognized by the UDPCVA: caretaking authority, decision-making authority, and

limited contact. N.C. Gen. Stat. §§ 50A-374-375. The applicable standards for each

aspect of custodial responsibility are slightly different, and here, separate prior

orders addressed custody for each of the parties’ two children, Elizabeth and Jay.1

1 Pseudonyms will be used for the privacy of the minors involved.
 ROYBAL V. RAULLI

 Opinion of the Court

Because both children’s previous custody orders addressed caretaking authority and

decision-making authority in the event of Father’s deployment, and the trial court

did not find that the circumstances required modification, the trial court did not

abuse its discretion in denying Father’s motion as to these two aspects of custodial

responsibility. But the prior orders did not address “limited contact,” which is a form

of visitation specifically authorized under the UDPCVA. N.C. Gen Stat. § 50A-375.

The statute requires limited contact to be granted to a “nonparent” with a “close and

substantial relationship” with a child unless limited contact is contrary to the child’s

best interest. Id. The trial court correctly granted limited contact to Father’s wife,

Stepmother, as to Elizabeth, but erred in its interpretation of Jay’s prior order and

North Carolina General Statute § 50A-373(1) as preventing the court from granting

limited contact as to Jay. We therefore affirm the trial’s court order in part but

remand for the trial court to grant limited contact with Jay to Stepmother unless the

court determines that she does not have a “close and substantial relationship” with

Jay or that limited contact would be contrary to his best interests. Id. We also

remand for the trial court to recognize Stepmother as a party to this action “until the

grant of limited contact is terminated.” N.C. Gen. Stat. § 50A-375(b).

 I. Background

 Mother and Father (hereinafter “parents”) never married but while they were

residing together, Elizabeth was born in 2012, and after their relationship ended, Jay

 -2-
 ROYBAL V. RAULLI

 Opinion of the Court

was born in 2016. In September of 2014, Plaintiff-Father filed a verified complaint

against Defendant-Mother for joint and legal custody of their daughter, Elizabeth.

On 21 November 2014, Mother answered Father’s verified complaint and requested

custody and child support.

 On 29 June 2016, the trial court entered into a consent order for joint legal and

physical custody of Elizabeth (“Elizabeth’s Consent Order”). When Elizabeth’s

Consent Order was entered, Father was residing with his then fiancé, Victoria,

(“Stepmother”) and her daughter, age seven, from a previous relationship. Elizabeth

had already been “introduced as a member of [Father’s] household,”2 and Mother was

seven months pregnant with Jay. Elizabeth’s order has extensive and detailed

provisions for shared custody and decision-making and has these provisions relevant

to this case:

 2. Time-Sharing (Physical Custody). The parties
 shall share the physical custody of the minor child as set
 forth herein.

 (a) Regular Weekly Schedule: Except for the
 periods of Vacation, Holidays and the Plaintiff’s Military
 Duty as set forth below and except for what may otherwise
 be mutually agreed upon between the parties the minor
 child shall be in the physical custody of the Plaintiff
 beginning at 9:30 AM on Sunday morning and continuing
 until the beginning of school on Tuesday morning [two (2)
 days later] or until 9:30 AM on Tuesday morning if there is
 no school. The minor child shall be in the physical custody

2 The parents developed the terms of Elizabeth’s Consent Order in mediation and it includes “limited
findings of fact” by consent. The facts regarding circumstances at the time of entry of Elizabeth’s
Consent Order come from findings of fact in the 2016 order regarding Jay’s custody.

 -3-
 ROYBAL V. RAULLI

 Opinion of the Court

of the Defendant beginning with her drop off at school on
Tuesday morning or from 9:30 AM on Tuesday if there is
no school until she is dropped off for the beginning of school
on Thursday morning [two (2) days later] or until 9:30 AM
on Thursday morning if there is no school. The minor child
shall be in the Plaintiff’s physical custody from the time
she is dropped off for school on Thursday morning or from
9:30 AM on Thursday morning if there is no school until
the time she is dropped off for school on Friday or until 9:30
AM on Friday if there is no school. The minor child shall
be in the Defendant’s physical custody from Friday at the
beginning of school or from 9:30 AM on Friday if there is
no school until Sunday morning at 9:30 AM. The net result
of this schedule is that the Plaintiff has physical custody of
the minor child for three (3) overnights (Sunday, Monday
and Thursday) and the Defendant has physical custody of
the minor child for four (4) overnights (Tuesday,
Wednesday, Friday and Saturday) with the minor child
each week, sharing her on a 2-2-1-2 schedule.

 (i) Military Duty: In the event that the Plaintiff
has an USAR Drill Weekend (also known as a “Battle
Assembly”), he shall pick up the minor child by 6:00 PM on
Sunday to begin his physical custodial time. If the Plaintiff
is unable to pick up the child by 6:00 PM, the Defendant
shall retain physical custody of the child until the
beginning of school on Monday morning or until 9:30 AM
on Monday morning if there is no school, or as may be
otherwise mutually agreed to between the parties.

....

 5. “Temporary Military Duty” or “Active Duty”.
To the extent that any Temporary Military Duty would
impact the Regular Weekly Schedule set forth above, the
parties shall return to mediation to determine a new
schedule, as appropriate at that time. Likewise, in the
event that the parties cannot create a mutually agreeable
schedule during any periods of Active Duty, the parties
shall return to mediation for assistance in reaching a new

 -4-
 ROYBAL V. RAULLI

 Opinion of the Court

 schedule. Until such time as a new Order or agreement is
 in place, the minor child shall remain in Defendant’s care
 if the Plaintiff is unavailable to exercise his time with the
 minor child.

 6. Legal Custody. The parties shall share jointly
 in the decisions in reference to the major areas of
 parenting, as often as possible, and specifically:

 ....

 (xi) The parties further stipulate and agree
 that should Plaintiff be deployed or otherwise unavailable
 due to his military status and therefore he be [sic] unable
 to respond to Defendant surrounding a matter that would
 generally fall under legal custody as described herein,
 Defendant shall be entitled to solely make said decision
 after waiting forty eight (48) hours to hear back from
 Plaintiff short of an emergency.

 After the entry of Elizabeth’s Consent Order, Jay was born in August 2016. In

September 2016, Father filed a motion to modify custody seeking modification of

Elizabeth’s Consent Order and determination of Jay’s custody. On 11 July 2017, the

trial court entered an order regarding Jay’s custody, granting the parents joint legal

and physical custody on a temporary basis, with a final order to be determined later.3

The trial court denied Father’s motion to modify Elizabeth’s Consent Order, finding

no substantial change of circumstances since entry of the order. When Jay’s order

was entered, Father had married Stepmother, and she was pregnant. Jay was eight

3The order provides that a hearing on permanent custody for Jay “shall not be scheduled before
December 2017.” Jay’s order does not appear to be a consent order, but prior to the Conclusions of
Law, the order states: “Based upon the consent of the parties and the foregoing Limited Findings of
Fact, the Court makes the following: CONCLUSIONS OF LAW.”

 -5-
 ROYBAL V. RAULLI

 Opinion of the Court

months old at the time of the hearing in April 2017; he was still breastfeeding and

not yet sleeping through the night. The trial court granted joint legal and physical

custody of Jay to the parents and set forth a detailed schedule for physical custody

and provisions regarding decision-making. As relevant to the issues in this case, the

order includes these provisions regarding military service:

 g. Should Plaintiff be unable to exercise his custodial time
 described herein due to travel for work or any form of
 military duty, including but not limited to: temporary
 military duty, active duty or deployment, the minor
 child shall remain in Defendant’s custody.

 h. The parties shall share jointly in the decisions in
 reference to the major areas of parenting, as often as
 possible, and specifically:

 i. The parties each have the right to make the day-to-
 day decisions for the minor child. In matters of more
 consequence with long-lasting significance, these
 issues will be discussed between the parties in an
 effort to resolve them by mutual agreement. In the
 event the parties cannot agree, they shall seek
 assistance from a relevant professional or return to
 mediation.

 ii. The parties shall each provide one another with a
 current address, email address and telephone
 number and shall provide notice of any change in
 this information at least 48 hours prior to such
 change.

 On 21 May 2018, Father notified Mother via email of his upcoming deployment.

Mother and Father discussed attending mediation but could not schedule mediation

in time to resolve their custody issues before Father’s departure. Father’s official

 -6-
 ROYBAL V. RAULLI

 Opinion of the Court

orders to report for “active duty as a member of your Reserve Component Unit” of the

United States Army were issued on 2 August 2018.4 He was required to report first

to Fort Hood, Texas, on 20 August 2018 for mandatory training prior to deployment,

and his mobilization would begin 27 August 2018 and last 400 days. The purpose of

his activation was “in support of OPERATION ENDURING FREEDOM- HORN OF

AFRICA.” The Orders did not allow dependents to accompany Father.

 On 13 August 2018, Father filed a “Motion to Grant Caretaking Authority to

Nonparent Due to Deployed Parent” under the UPDCVA with the Orange County

District Court. He alleged Stepmother and the children’s stepsister and half brother

have close and substantial relationships with Elizabeth and Jay and that Stepmother

should be granted “caretaking and decision-making authority, or in the alternative,

limited contact” with both children.

 Despite Father’s deployment date of 20 August 2018, the trial court set the

hearing for 22 October 2018. Father filed a petition for a writ of mandamus with this

Court to order the trial court to expedite the hearing as required under North

Carolina General Statute § 50A-371.5 On 24 September 2018, this Court granted

4The United States Army Reserves is included in the definition of “Uniformed service.” N.C. Gen.
Stat. § 50A-351(18).

5 The UDPCVA requires the trial court to conduct an expedited hearing. N.C. Gen. Stat. § 50A-371.
We understand that the trial court’s docket is normally set far in advance and is more than full, but
because military deployments often require parents to report for duty very soon, the statute requires
this type of hearing to be given priority.

 -7-
 ROYBAL V. RAULLI

 Opinion of the Court

Father’s petition and ordered the trial court to hold a hearing by 8 October 2018. On

28 September 2018, the trial court held a hearing on Father’s motion and entered an

order on 8 October 2018 denying the motion as to Jay and granting it in part by

ordering limited contact only for Elizabeth. Father timely appealed.

 II. Interlocutory Appeal

 The order on appeal is an interlocutory order, since it does not resolve all

pending claims and is a temporary order. An order issued under the UDPCVA is by

definition a “temporary order” and terminates “60 days from the date the deploying

parent gives notice of having returned from deployment to the other parent” or “death

of the deploying parent”:

 A temporary order for custodial responsibility issued under
 Part 3 of this Article shall terminate, if no agreement
 between the parties to terminate a temporary order for
 custodial responsibility has been filed, 60 days from the
 date the deploying parent gives notice of having returned
 from deployment to the other parent and any nonparent
 granted custodial responsibility, when applicable, or upon
 the death of the deploying parent, whichever occurs first.

N.C. Gen. Stat. § 50A-388(a). “The general rule which has been stated by this Court

is that temporary custody orders are interlocutory and unless the order affects a

“substantial right of [the appellant] which cannot be protected by timely appeal from

the trial court’s ultimate disposition of the entire controversy on the merits[,]” the

appeal must be dismissed. File v. File, 195 N.C. App. 562, 569, 673 S.E.2d 405, 410

(2009) But all prior cases addressing appeals of temporary custody orders dealt with

 -8-
 ROYBAL V. RAULLI

 Opinion of the Court

orders entered under Chapter 50, and in those cases, a permanent order will normally

be entered in the near future. See Senner v. Senner, 161 N.C. App. 78, 81, 587 S.E.2d

675, 677 (2003). (“[A]n order is temporary if either (1) it is entered without prejudice

to either party, (2) it states a clear and specific reconvening time in the order and the

time interval between the two hearings was reasonably brief; or (3) the order does not

determine all the issues.”). Our Court has not previously addressed jurisdiction to

review an custodial responsibility order issued under the UDPCVA.6

 Father contends this order falls under North Carolina General Statute § 50-

19.1, which allows immediate appeal of custody orders even if other claims remain

pending in the same action:

 Notwithstanding any other pending claims filed in the
 same action, a party may appeal from an order or judgment
 adjudicating a claim for absolute divorce, divorce from bed
 and board, child custody, child support, alimony, or
 equitable distribution if the order or judgment would
 otherwise be a final order or judgment within the meaning
 of G.S. 1A-1, Rule 54(b), but for the other pending claims
 in the same action.

N.C. Gen. Stat. § 50-19.1 (2017).

 We agree that a custodial responsibility order under the UDPCVA is a variety

of “child custody” order covered by North Carolina General Statute § 50-19.1.

6 “Custodial responsibility” is “[a] comprehensive term that includes any and all powers and duties
relating to caretaking authority and decision-making authority for a child. The term includes custody,
physical custody, legal custody, parenting time, right to access, visitation, and the authority to
designate limited contact with a child.” N.C. Gen. Stat. § 50A-351(6).

 -9-
 ROYBAL V. RAULLI

 Opinion of the Court

Although Jay’s Custody order was a temporary order and issues regarding his

permanent custody remain unresolved, the issues regarding his permanent custody

under Chapter 50 are independent of Father’s claim under the UDPCVA. The order

on appeal is technically a “temporary” order, since custodial responsibility orders

under the UDPCVA are required to be temporary orders unless the parties agree to

entry of a permanent order.7 See N.C. Gen. Stat. §§ 50A-385-388. But orders for

custodial responsibility under the UDPCVA would be essentially non-appealable if

we treated them like temporary custody orders under Chapter 50. The order on

appeal is a final order addressing all issues raised under the UDPCVA and those

issues are independent of the underlying Chapter 50 custody claims, so it is otherwise

“a final order or judgment within the meaning of G.S. 1A-1, Rule 54(b), but for the

other pending claims in the same action.” N.C. Gen. Stat. § 50-19.1. In addition, as

a practical matter, since a hearing regarding Jay’s pending permanent custody could

not be done while Father is deployed, if Father were required to wait for resolution

of Jay’s permanent custody before appealing the custodial responsibility order, the

UDPCVA order would be rendered moot. Because the order under the UDPCVA is a

7“After a deploying parent receives notice of deployment and during the deployment, a court may issue
a temporary order granting custodial responsibility unless prohibited by the Servicemembers Civil
Relief Act, 50 U.S.C. app. §§ 521-522. A court may not issue a permanent order granting custodial
responsibility in the absence of the deploying parent without the consent of the deploying parent.”
N.C. Gen. Stat. § 50A-370(a).

 - 10 -
 ROYBAL V. RAULLI

 Opinion of the Court

final order addressing the UDPCVA claim, we have jurisdiction to review the order

under North Carolina General Statute § 50-19.1.

 III. Parties

 We first note that Stepmother has not formally intervened or been made a

party to this case.8 Either parent may file a claim or motion under the UDPCVA.

The UDPCVA addresses how and when a “proceeding for a temporary custody order”

may be filed. N.C. Gen. Stat. § 50A-370(b) (“At any time after a deploying parent

receives notice of deployment, either parent may file a motion regarding custodial

responsibility of a child during deployment.”). This portion of the statute does not

address intervention or adding parties to the case. Later in Article 3, North Carolina

General Statute § 50A-375, entitled “Grant of Limited Contact,” deals with provisions

of the order and provides that “[a]ny nonparent who is granted limited contact shall

be made a party to the action until the grant of limited contact is terminated. N.C.

Gen. Stat. § 50A-375(b) (emphasis added). “Limited contact” is defined as “[t]he

opportunity for a nonparent to visit with a child for a limited period of time. The term

includes authority to take the child to a place other than the residence of the child.”

N.C. Gen. Stat. § 50A-351(11).

8 Elizabeth’s Consent Order includes a provision regarding intervention by “Defendant’s mother,
Diane Ivers Raulli” who “filed a Motion to Intervene in this case on June 28, 2016.” The parties
stipulated Defendant’s mother was allowed to intervene and a consent order was to be prepared
granting intervention, reserving her request for grandparent visitation rights. Our record does not
reveal if the order for intervention was ever entered or if Grandmother’s request for visitation was
ever considered.

 - 11 -
 ROYBAL V. RAULLI

 Opinion of the Court

 The order on appeal granted Stepmother, a “nonparent” as defined by North

Carolina General Statute § 50A-351(11), “limited contact” with Elizabeth, so she

should have been made a party to this action “until the grant of limited contact is

terminated.” N.C. Gen. Stat. § 50A-375(b). We must therefore consider whether we

have jurisdiction to consider the issues on appeal, since all “necessary parties” must

be joined in an action under North Carolina General Statute § 1A-1, Rule 19:

 Rule 19 dictates that all necessary parties must be joined
 in an action. Rule 19 requires the trial court to join as a
 necessary party any persons united in interest and/or any
 persons without whom a complete determination of the
 claim cannot be made since a judgment without such
 necessary joinder is void. A party does not waive the
 defense of failure to join a necessary party; an objection on
 this basis can be raised at any time. A reviewing court is
 required to raise the issue ex mero motu to protect its
 jurisdiction.

Commonwealth Land Title Ins. Co. v. Stephenson, 97 N.C. App. 123, 125, 387 S.E.2d

77, 79 (1990) (emphasis added) (citations, quotation marks, brackets, and ellipsis

omitted).

 Under North Carolina General Statute § 50A-370(b), only the parents may

bring a claim under the UDPCVA, so Stepmother could not have filed the motion.

N.C. Gen. Stat. § 50A-370(b). Under North Carolina General Statute § 50A-375(b),

the trial court is directed to make a person to whom limited contact is granted “a

party to the action until the grant of limited contact is terminated.” N.C. Gen. Stat.

§ 50A-375(b). “It is well established that ‘the word “shall” is generally imperative or

 - 12 -
 ROYBAL V. RAULLI

 Opinion of the Court

mandatory.’” Multiple Claimants v. N. Carolina Dep’t of Health & Human Servs.,

361 N.C. 372, 378, 646 S.E.2d 356, 360 (2007) (quoting State v. Johnson, 298 N.C.

355, 361, 259 S.E.2d 752, 757 (1979)). In addition, “[a] nonparent granted caretaking

authority, decision-making authority, or limited contact under this Part has standing

to enforce the grant until it is terminated under Part 4 of this Article or by court

order.” N.C. Gen. Stat. § 50A-376(b). Thus, Stepmother would have standing to

enforce the order under North Carolina General Statute § 50A-376(b). The order also

specifically directs Stepmother to participate in the visitation schedule for Elizabeth

and to “work together” with Mother to ensure that Elizabeth does not miss special

events and that she will see her step and half siblings for “major holidays, including

Thanksgiving and Christmas.”

 We also recognize that in custody cases, our Courts have previously recognized

“de facto parties” where a nonparent has been granted custodial rights by a court

order and have allowed the “de facto” parties to be formally added as parties even

after entry of a court order or on appeal. In Sloan v. Sloan, this Court noted

 Moreover, after a trial court has awarded custody to
 a person who was not a party to the action or proceeding,
 this Court has held that
 it would be proper and advisable for that
 person to be made a party to the action or
 proceeding to the end that such party would
 be subject to orders of the court. This may be
 done even after judgment and by the
 appellant court when the case is appealed.
 By filing a motion to intervene in the matter, intervenors

 - 13 -
 ROYBAL V. RAULLI

 Opinion of the Court

 were simply requesting to be formally recognized as parties
 to a child custody action in which they had already been
 awarded visitation rights. Therefore, the trial court did not
 err in granting their motion to intervene even after the
 order determining permanent custody of C.S. was entered.

164 N.C. App. 190, 194-95, 595 S.E.2d 228, 231 (2004) (citation, ellipsis, and brackets

omitted).

 Therefore, Stepmother was treated as a “de facto” party based upon the trial

court’s order granting her limited contact and ordering her to take specific actions,

and the fact that the trial court did not formally order her to be added as a party does

not impair our jurisdiction. As noted in In re Custody of Branch, it is “proper and

advisable” for Stepmother to be “made a party to the action or proceeding to the end

that such party would be subject to orders of the court.” 16 N.C. App. 413, 415, 192

S.E.2d 43, 45 (1972). “We have held, however, that this may be done even after

judgment and by the appellate court when the case is appealed.” Id. Based upon

North Carolina General Statute § 50A-375, Stepmother should be made a party to

this action “until the grant of limited contact is terminated,” so we will remand the

order on appeal for the trial court to include this provision.

 IV. Standard of Review

 No case has yet addressed the standard of review for custodial responsibility

orders under the UDPCVA. The issues presented here are primarily statutory

construction issues, which we review de novo:

 - 14 -
 ROYBAL V. RAULLI

 Opinion of the Court

 We review issues of statutory construction de novo. In
 matters of statutory construction, our primary task is to
 ensure that the purpose of the legislature, the legislative
 intent, is accomplished. Legislative purpose is first
 ascertained from the plain words of the statute. A statute
 that is clear on its face must be enforced as written. Courts,
 in interpreting the clear and unambiguous text of a statute,
 must give it its plain and definite meaning, as there is no
 room for judicial construction. . . .
 In applying the language of a statute, and because the
 actual words of the legislature are the clearest
 manifestation of its intent, we give every word of the
 statute effect, presuming that the legislature carefully
 chose each word used. Finally, we must be guided by the
 fundamental rule of statutory construction that statutes in
 pari materia, and all parts thereof, should be construed
 together and compared with each other.

Hill v. Hill, ___ N.C. App. ___, ___, 821 S.E.2d 210, 227-28 (2018) (alteration in

original) (quoting In re Ivey, ___ N.C. App. ___, ___, 810 S.E.2d 740, 744 (2018)).

 Father challenges none of the trial court’s findings of fact as unsupported by

the evidence, so where the trial court has correctly interpreted the statute, we review

the trial court’s conclusions of law to determine if they are supported by the findings

of fact. Shipman v. Shipman, 357 N.C. 471, 475, 586 S.E.2d 250, 254 (2003). “Absent

an abuse of discretion, the trial court’s decision in matters of child custody should not

be upset on appeal.” Everette v. Collins, 176 N.C. App. 168, 171, 625 S.E.2d 796, 798

(2006). “An abuse of discretion occurs when the trial court’s ruling is so arbitrary

that it could not have been the result of a reasoned decision.” In re N.G., 186 N.C.

App. 1, 10-11, 650 S.E.2d 45, 51 (2007).

 - 15 -
 ROYBAL V. RAULLI

 Opinion of the Court

 V. Caretaking and Decision-Making Authority for Elizabeth

 Just as the underlying custody order provisions for Elizabeth and Jay differ,

the trial court’s order under the UDPCVA also has different provisions for Elizabeth

and Jay. As to Elizabeth, the trial court granted limited contact; as to Jay, the trial

court denied Father’s motion entirely. We will therefore address the provisions of the

order regarding Elizabeth and Jay separately.

A “Prior Judicial Order” under N.C. Gen. Stat § 50A-373

 Father does not challenge the trial court’s findings of fact but argues the trial

court erred by denying caretaking authority or decision-making authority as to

Elizabeth. The trial court granted only limited contact with Elizabeth to Stepmother.

Father argues first that Elizabeth’s Consent Order does not “directly address a

deployment but only addresses ‘Temporary Military Duty’ or ‘Active Duty.’” He

contends that these terms, as used in Elizabeth’s Consent Order, refer to his “military

activity during his once a month drill or when he is sent away for required military

training in preparation for a deployment.” Thus, Father argues, since Elizabeth’s

Consent Order does not address deployment, it is not a “prior judicial order

designating custodial responsibility of a child in the event of deployment.” N.C. Gen.

Stat. § 50A-373(1) (emphasis added). Father contends that the trial court should

have considered his claim as to Elizabeth under North Carolina General Statute §

 - 16 -
 ROYBAL V. RAULLI

 Opinion of the Court

50A-374, which controls in the absence of a “prior judicial order” addressing

deployment.

 Mother agrees with Father that Elizabeth’s Consent Order “does not

specifically refer to the term ‘deployment’ so it is not a ‘prior judicial [order]’ as

contemplated by N.G. Gen. Stat. § 50A-373(1).” She agrees that “N.C.G.S. § 50A-374

was the governing statute for the trial court to determine whether to grant caretaking

and decision-making authority for” Elizabeth and contends the trial court applied it

properly since North Carolina General Statute § 50A-374 says the court may grant

caretaking authority to a nonparent but does not require that it do so.

 The trial court first made detailed findings of fact regarding the prior orders

and various family members, including Stepmother, the children’s stepsister, and

their half brother. As to Elizabeth, the trial court made these relevant findings of

fact and conclusions of law:

 15. [Mother] has not cut off access to both minor children
 to [Stepmother] or to their step-sister and half-brother.

 16. [Mother] and [Stepmother] communicate better with
 each other than the parties do with one another.

 17. [Mother] and [Stepmother] seem to work out these
 children maintaining a relationship amongst
 themselves and both are acting in the children’s best
 interests.

 ....

 19. There is a prior permanent custody order in place for

 - 17 -
 ROYBAL V. RAULLI

 Opinion of the Court

 the minor child [Elizabeth]. The order refers to “active
 duty,” but not specifically to “deployment.”

20. There are sufficient circumstances to grant limited
 contact as to [Elizabeth] but deny custodial
 responsibility and decision making authority. The
 terms of the prior order are sufficient to address
 custodial/decision-making authority.

21. Sufficient circumstances exist to allow [Stepmother]
 limited contact with [Elizabeth] as described herein.

22. [Mother] and [Stepmother] can do a great job in keeping
 these four children in contact with one another and
 that both of them want to see these children thrive.

23. [Mother] and [Stepmother] can augment the above
 limited contact in ways that are beneficial to all four of
 the above-mentioned children even though only two of
 them are subject to this order.

24. [Mother] and [Stepmother] have not acted in any way
 other than keeping the four children in contact with
 one another and allowing the children to thrive.

....

Based on the foregoing FINDINGS OF FACT, the Court
makes the following:

 CONCLUSIONS OF LAW

1. The facts as set forth in paragraphs 1 through 25 above
are fully incorporated herein by reference to the extent that
they are also conclusions of law.

2. The Court has jurisdiction of the parties and the subject
matter of this action.

3. That there are not sufficient circumstances to modify the

 - 18 -
 ROYBAL V. RAULLI

 Opinion of the Court

 previous custody orders of [Elizabeth] and [Jay] to allow
 custodial responsibility and grant decision making
 authority to [Stepmother.]

 4. That [Elizabeth’s] custody order is not clear on limited
 contact in the event of Plaintiff’s deployment and limited
 contact as to [Elizabeth] to [Stepmother] is granted as
 described herein.

 5. That NCGS §50A-373 specifically says, “In a proceeding
 for a grant of custodial responsibility pursuant to this Part”

 6. That NCGS §50A-373 and §50A-375 are both located in
 Part 3 of Article 3, Chapter 50A of the North Carolina
 General Statutes.

 7. That the grant of Limited Contact is a proceeding of Part
 3 of Article 3, Chapter 50A of the North Carolina General
 Statutes and is subject to NCGS §50A-373.

 Although Mother and Father both contend in their briefs that the claim for a

custodial responsibility order for Elizabeth is not subject to North Carolina General

Statute § 50A-373, we disagree, at least in part. We will first address the “Judicial

Procedure for Granting Custodial Responsibility During Deployment” as set out in

Part 3 of the UPDCVA. Part 3 sets out provisions applicable to the trial court’s

resolution of a claim for a custodial responsibility order. N.C. Gen. Stat. §§ 50A-370-

384. North Carolina General Statute § 50A-373 titled, “Effect of a prior judicial

 - 19 -
 ROYBAL V. RAULLI

 Opinion of the Court

decree or agreement,”9 governs cases in which the parents have an existing order or

agreement addressing “custodial responsibility of a child in the event of deployment”:

 In a proceeding for a grant of custodial responsibility
 pursuant to this Part, the following shall apply:
 (1) A prior judicial order designating custodial
 responsibility of a child in the event of deployment is
 binding on the court unless the circumstances require
 modifying a judicial order regarding custodial
 responsibility.

N.C. Gen. Stat. § 50A-373.

B. Terminology

 One issue noted by the Prefatory Note to the Uniform Act is “The Problem of

Differing Terminology”:

 The UDPCVA seeks to establish uniformity in the
 terminology used in custody cases arising from
 deployment, given the prospect that many of these cases
 will involve more than one jurisdiction. States, however,
 currently differ on the terminology that they use to
 describe issues of custody and visitation. In enacting the
 UDPCVA, states are encouraged to add any state specific
 terminology to the definitions of the specific terms used in
 the Act, without replacing the Act’s specific terms or
 deleting the existing definitions of those terms. Use of
 common terms and definitions by states enacting the Act
 will facilitate resolution of cases involving multiple
 jurisdictions.

9We note that the Uniform Act entitles this same section “Effect of Prior Judicial Order or Agreement,”
while North Carolina General Statute § 50A-373 is titled “Effect of prior judicial decree or agreement.”
(Emphasis added.) Yet the substantive language of both the Uniform Act and North Carolina statute
uses the same terminology: “A prior judicial order . . . .” N.C. Gen. Stat. § 50A-373. The Official
Comments following the section also use the term “decree” instead of “order.” We have been unable to
determine any relevant difference between the terms “order” and “decree” for purposes of this case.

 - 20 -
 ROYBAL V. RAULLI

 Opinion of the Court

Unif. Deploy. Parent Cust. & Vist. Act, Prefatory Note.

 The terminology used by the UDPCVA is crucial to both the parents’

arguments and our analysis, so we will first address the meaning of the controlling

terms. The UDPCVA includes definitions of many terms, and where the statute has

provided a definition, we must use that definition. See Knight Pub. Co. v. Charlotte-

Mecklenburg Hosp. Auth., 172 N.C. App. 486, 492, 616 S.E.2d 602, 607 (2005) (“If a

statute ‘contains a definition of a word used therein, that definition controls,’ but

nothing else appearing, ‘words must be given their common and ordinary meaning[.]’”

(alteration in original) (quoting In re Clayton-Marcus Co., 286 N.C. 215, 219, 210

S.E.2d 199, 203 (1974)).

 North Carolina’s UDPCVA was adopted in 2013 with only a few variations

from the Uniform Act. North Carolina General Statute § 50A-395, titled “Uniformity

of application and construction” requires that “[i]n applying and construing this

Article, consideration shall be given to the need to promote uniformity of the law with

respect to its subject matter among states that enact it.” N.C. Gen. Stat. § 50A-395.

Very few other state appellate courts have addressed orders issued under the

UDPCVA, and none have addressed the issues raised in this case. We will consider

any differences between the Uniform Act and the law as adopted in North Carolina

to determine if they are relevant to the issues in this case, and we will consider the

Prefatory Note and Comments to the Uniform Act as applicable. As to any

 - 21 -
 ROYBAL V. RAULLI

 Opinion of the Court

terminology used by the Uniform Act and adopted by North Carolina, we will seek to

interpret terms as intended under the Uniform Act “to promote uniformity of the law

with respect to its subject matter.” Id. We will therefore use the specific terms as

stated in the UDPCVA in accord with their definitions and will include terms used in

North Carolina “without replacing the Act’s specific terms or deleting the existing

definitions of those terms.” Id.

C. “Custodial Responsibility”

 There is no dispute that Elizabeth’s Consent Order is a “prior judicial order,”

as it is an order previously issued in Elizabeth’s custody case. The issue on appeal

arises based upon the rest of the phrase: “designating custodial responsibility of a

child in the event of deployment.” N.C. Gen. Stat. § 50A-373(1). The first term we

must consider is “custodial responsibility.” The UDPCVA uses several terms unique

to the Uniform Act to address various aspects of custody, recognizing that different

states use different terminology. “Custodial responsibility” is the “umbrella term” for

the various aspects of custody:

 The UDPCVA establishes one umbrella term,
 “custodial responsibility,” for all issues relating to custody,
 including the responsibility often referred to in other state
 custody law as physical custody, visitation, and legal
 custody. The Act also establishes three sub-categories of
 custodial responsibility that can be transferred to others
 during deployment: “caretaking authority,”
 “decision-making authority,” and “limited contact.” The
 terminology used for each of these sub-categories is
 original to the UDPCVA. The term “caretaking authority”

 - 22 -
 ROYBAL V. RAULLI

 Opinion of the Court

 is meant to encompass the authority to live with, spend
 time with, or visit with a child. States often use a number
 of terms that fall within this definition, including “primary
 physical custody,” “secondary physical custody,”
 “visitation,” and “possessory conservatorship.” All these
 are meant to be subsumed under the term “caretaking
 authority.”
 In contrast, the term “decision-making authority”
 means the authority to make decisions about a child’s life
 beyond the authority that ordinarily accompanies a
 transfer of caretaking authority under state custody law.
 This term is meant to encompass the authority referred to
 in many states as “legal custody,” including the authority
 reasonably necessary to make decisions such as the ability
 to enroll the child in a local school, to deal with health care,
 to participate in religious training, and to allow the child
 to engage in extracurricular activities and travel.
 Finally, the term “limited contact” refers to a form of
 visitation with the child given to nonparents on the request
 of a deployed service member. This type of visitation allows
 the service member to sustain his or her relationship with
 the child through designating either a family member or
 other person with whom the child has a close relationship
 to spend time with the child during the service member’s
 absence. The limited contact definition allows the
 possibility that it may be granted to minors as well as
 adults. Thus a minor half-sibling or step-sibling of the child
 could be granted limited contact during a service member’s
 deployment. This type of contact with the child is a more
 limited form of visitation than courts usually grant to
 parents or grandparents outside the deployment context.

N.C. Gen. Stat. § 50A-351 Official Comment.

 Elizabeth’s Consent Order addressed physical custody and visitation,

comparable to “caretaking;” we have quoted some of those provisions above. The

Consent Order also had detailed provisions under the heading “Legal Custody” which

 - 23 -
 ROYBAL V. RAULLI

 Opinion of the Court

addressed joint decision-making in the “major areas of parenting, as often as

possible,” including subsections addressing day-to-day decisions; medical treatment;

education; extracurricular activities; and travel out of state. It also addressed

decision-making when Father is “deployed or otherwise unavailable due to his

military status and therefore he be [sic] unable to respond to Defendant surrounding

a matter that would generally fall under legal custody as described herein.”

 But Elizabeth’s Order does not address “limited contact,” which differs

somewhat from the types of provisions typically included in a consent order between

two parents addressing only their own custody and visitation rights under Chapter

50. “Limited contact” is a form of visitation with nonparents; under Chapter 50, a

trial court can grant visitation to nonparents only in very limited circumstances. See

McIntyre v. McIntyre, 341 N.C. 629, 635, 461 S.E.2d 745, 749-50 (1995) (finding

grandparents have the right to seek visitation “only in certain clearly specified

situations”). This type of visitation with persons other than parents can be addressed

by an order or agreement, but in this instance, the parents did not set forth any form

of “limited contact” with any nonparent.10

D. “Deployment”

 The next term in contention here is “deployment.” Fortunately, the UDPCVA

also defines deployment:

10As noted above, Elizabeth’s Consent Order included a provision regarding intervention by the
maternal grandmother and her request for grandparent visitation rights was reserved.

 - 24 -
 ROYBAL V. RAULLI

 Opinion of the Court

 The movement or mobilization of a service member to a
 location for more than 90 days, but less than 18 months,
 pursuant to an official order that (i) is designated as
 unaccompanied; (ii) does not authorize dependent travel; or
 (iii) otherwise does not permit the movement of family
 members to that location.

N.C. Gen. Stat. § 50A-351(9).

 Both Mother and Father contend that Elizabeth’s Consent Order refers to

“Temporary Military Duty” and “Active Duty” but not specifically “deployment.” This

is not entirely correct, as the order includes a decision-making provision which

specifically includes deployment:

 The parties further stipulate and agree that should
 Plaintiff be deployed or otherwise unavailable due to his
 military status and therefore he be unable to respond to
 Defendant surrounding a matter that would generally fall
 under legal custody as described herein, Defendant shall
 be entitled to solely make said decision after waiting forty-
 eight (48) hours to hear back from Plaintiff short of an
 emergency.

(Emphasis added.)

 Certainly, the parents were using the common meaning of “deployment” in the

Consent Order and not the specific definition under the UDPCVA but that does not

mean that Elizabeth’s Consent Order provisions do not address the circumstances

described as “deployment” as defined by North Carolina General Statute § 50A-

351(9). Both deployment and active duty are defined by the Department of Defense,

and we look to those definitions to aid our interpretation. Active duty is defined as,

 - 25 -
 ROYBAL V. RAULLI

 Opinion of the Court

“Full-time duty in the active military service of the United States, including active

duty or full-time training duty in the Reserve Component.” U.S. Dep’t of Defense,

Dictionary of Military and Associated Terms, 7 (May 2019). Deployment is defined

as, “The movement of forces into and out of an operational area.” Id. at 65.

 The terms of Elizabeth’s order actually contemplate several types of military

duty by Father, ranging from weekend drill—which would not be “deployment” as

defined by the UDPCVA due to the short time duration—to “Active Duty,” which is

the type of duty Father was deployed to perform. One subsection of the order,

following the regular weekly schedule, addresses a variation to the schedule for his

monthly drill weekends: “Military Duty: In the event that the Plaintiff has an USAR

Drill Weekend (also known as a ‘Battle Assembly’), he shall pick up the minor child

by 6:00 PM on Sunday to begin his physical custodial time.” Later, the Consent Order

addresses longer term assignments in a section referring to “Temporary Military

Duty” and “Active Duty,” including “any Temporary Military Duty that would impact

the Regular Weekly Schedule set forth above.” (Emphasis added.) Father’s

deployment to Africa for over a year obviously “impact[s] the Regular Weekly

Schedule.” Thus, Elizabeth’s Consent Order is “[a] prior judicial order designating

custodial responsibility of a child in the event of deployment[.]” N.C. Gen. Stat. § 50A-

373(1) (emphasis added). Although the Consent Order does not address limited

 - 26 -
 ROYBAL V. RAULLI

 Opinion of the Court

contact, it addresses caretaking authority and decision-making authority in the event

of deployment.

E. Application of N.C. Gen. Stat. 50A-373

 We have determined that Elizabeth’s Consent Order is “[a] prior judicial order

designating custodial responsibility of a child in the event of deployment,” so it is

“binding on the court unless the circumstances require modifying a judicial order

regarding custodial responsibility.” N.C. Gen. Stat. §50A-373(1). As noted above, the

Consent Order addresses only “caretaking” and “decision-making,” so it was “binding”

on the trial court “unless the circumstances require modifying a judicial order

regarding custodial responsibility.” Id. (emphasis added). The trial court found “the

terms of the prior order are sufficient to address custodial/decision-making

authority.” But Father argues that

 [i]t is well established in North Carolina that a trial court
 may order a modification of an existing child custody order
 between two natural parents if the party moving for
 modification shows that a “substantial change of
 circumstances affecting the welfare of the child” warrants
 a change in custody provided that the change is in the best
 interest of the child.
 However, the North Carolina legislature enacted
 North Carolina’s UDPCVA with a weaker “circumstances
 require” in NCGS §50A-373(1) versus “circumstances meet
 the requirements of law of this state other than this [act]
 for modifying a judicial order regarding custodial
 responsibility,” of the model act section 305(1).
 Plaintiff/Appellant’s position is that “circumstances
 required” is too nebulous to be considered anything but
 the normal conditions to modify a custody order.

 - 27 -
 ROYBAL V. RAULLI

 Opinion of the Court

 Therefore, [Elizabeth’s] order should not be viewed for
 caretaking authority through NCGS §50A-373(1) but
 through NCGS 50A-374.

(Citations omitted.)

 North Carolina General Statute § 50A-373 differs from the Uniform Act’s

comparable Section 305, as noted by Father, in a manner he contends inappropriately

gives the trial court entirely unlimited discretion to enter or to refuse to enter a

custodial responsibility order contrary to a “prior judicial order” which addresses

custody in the event of deployment. The UDPCVA provides no specific guidance on

why our General Assembly substituted the terms “circumstances require” for

“circumstances meet the requirements of law of this state other than this [act] for

modifying a judicial order regarding custodial responsibility.” But North Carolina

General Statute § 50A-395 requires us to give consideration “to the need to promote

uniformity of the law with respect to its subject matter among states that enact it.”

N.C. Gen. Stat. § 50A-395. In addition, the General Assembly adopted the Comments

to Section 305 of the Uniform Act, and these comments address the language of the

Uniform Act, despite the difference in the language adopted by North Carolina. The

Official Comment notes that

 [s]ection 305 [G.S. 50A-373] governs the court’s
 consideration of a past judicial decree or agreement
 between the parents that specifically contemplates custody
 during a service member’s deployment. In crafting this
 provision, the UDPCVA seeks to give significant deference
 to past decrees and agreements in which issues of custody

 - 28 -
 ROYBAL V. RAULLI

 Opinion of the Court

 during deployment have already been considered and
 resolved. At the same time, it seeks to balance the value of
 certainty gained by leaving settled matters settled against
 the recognition that in some circumstances past
 determinations may no longer be in the best interest of the
 child.
 This provision gives somewhat more deference to
 custody provisions in prior judicial decrees than in out-of-
 court agreements. To overturn the former, the challenger
 must first meet the state’s standard for modifying a judicial
 decree regarding custodial responsibility. In most states,
 this standard requires that there be a showing of a
 substantial or material change of circumstances that was
 not foreseeable at the time the prior judicial decree was
 entered. Only if a challenger meets that showing, as well
 as overcomes the presumption that the previous decree was
 in the best interest of the child, may the court modify the
 earlier decree. In contrast, the challenger of a custody
 provision established in a past agreement needs only to
 overcome the presumption that the provision is in the best
 interest of the child.

N.C. Gen. Stat. § 50A-373 Official Comment (alteration in original) (emphasis added).

 By rejecting the phrase “meet the requirements of the law of this state other

than this [act]” as used in the Uniform Act, the General Assembly was removing the

portion of the statute which would arguably have required the exact same substantial

change of circumstances as the standard for modification of a prior permanent

custody order under North Carolina’s UDPCVA. As enacted in North Carolina, the

UPDCVA allows the trial court to modify a prior custody order with a lesser showing

than would normally be required for modification of a permanent order. In other

words, the movant need not prove a “substantial change in circumstances that was

 - 29 -
 ROYBAL V. RAULLI

 Opinion of the Court

not foreseeable at the time the prior judicial decree was entered[,]” as described in

the Official Comments. See N.C. Gen. Stat. § 50A-373 Official Comment (allowing an

existing custody order to be modified if the “circumstances require” which is left to

the trial court to determine).

 This lesser standard for “circumstances” which “require” modification is in

accord with the purpose of the UDPCVA. It is intended to address “issues of child

custody and visitation that arise when parents are deployed in military or other

national service” since “deployment in national service raises custody issues that are

not adequately dealt with in the law of most states.” Unif. Deploy. Parent Cust. &

Vist. Act, Prefatory Note. If a motion to modify a prior permanent custody order

based upon a substantial change of circumstances affecting the best interests of the

children under North Carolina General Statute § 50-13.7 adequately addressed the

custody concerns of deployed parents and their families, there would be no need for

the UDPCVA to address the standard for modification at all. Often, the parents will

have an existing order or agreement, which may or may not address deployment or

as in this case, the order may address some aspects of custodial responsibility but not

others. The UDPCVA seeks to enable deployed parents to obtain an order quickly

and to preserve not just the relationship between the deployed parent and child, but

also between the child and the deployed parent’s other family members or others who

have a substantial relationship with the child based upon the deployed parent.

 - 30 -
 ROYBAL V. RAULLI

 Opinion of the Court

 Although we agree with Father that the phrase “circumstances require” may

seem “nebulous,” it is given more content and meaning when read in context with the

other applicable provisions of the UDPCVA and the “polar star” of all child custody

cases: the best interests of the child.11

 In custody matters, the best interests of the child is the
 polar star by which the court must be guided. Although the
 trial judge is granted wide discretion, a judgment awarding
 permanent custody must contain findings of fact in support
 of the required conclusion of law that custody has been
 awarded to the person who will best promote the interest
 and welfare of the child. These findings may concern
 physical, mental, or financial fitness or any other factors
 brought out by the evidence and relevant to the issue of the
 welfare of the child. The welfare of the child is the
 paramount consideration to which all other factors,
 including common law preferential rights of the parents,
 must be deferred or subordinated.

McRoy v. Hodges, 160 N.C. App. 381, 386-87, 585 S.E.2d 441, 445 (2003) (citations,

quotation marks, and ellipsis omitted).

 The trial court must give deference to a “prior judicial order” which addresses

“custodial responsibility” in the event of deployment, but if “circumstances require,”

it may enter an order under the UDPCVA with additional terms for any aspect of

 11 North Carolina General Statute § 50A-374, the statute Father argues should apply to his motion as

to Elizabeth, grants the trial court discretion to grant caretaking authority if it is in the best interest
of the child. N.C. Gen. Stat. § 50A-374(a) (“In accordance with the laws of this State and on the motion
of a deploying parent, a court may grant caretaking authority of a child to a nonparent who is an adult
family member of the child or an adult with whom the child has a close and substantial relationship if
it is in the best interest of the child.” (emphasis added)). Several other sections of the UDPCVA also
refer to “the law of this State” and “best interest of the child.” See N.C. Gen. Stat. § 50A-352, 373,
374, 375, 377, 378, 379, 387 & 388. The UDPCVA incorporates the “best interest” standard explicitly
in various sections. See N.G. Gen. Stat. §§ 50A-373(b), 375(a), 377(3)-(4), 379(a), 387.

 - 31 -
 ROYBAL V. RAULLI

 Opinion of the Court

“custodial responsibility,” including caretaking, decision-making, or limited contact.

See N.C. Gen. Stat. §50A-373(a). Although it is not clear from the trial court’s

conclusions of law exactly how it determined North Carolina General Statute § 50A-

373 applied to Elizabeth’s Consent Order, the trial court’s rationale is clear.

Essentially, the trial court examined the relationships between Mother, Stepmother,

and all four children; noted the admirable cooperation between Mother and

Stepmother; examined the existing provisions of Elizabeth’s Consent Order; and

determined that the circumstances required no change to the provisions of the order

regarding caretaking or decision-making, but that it would be in Elizabeth’s best

interest to have limited contact as set out in the order.

F. Caretaking Authority

 Father argues that the trial court was not bound by Elizabeth’s Consent Order

and erred by not granting Stepmother caretaking authority under North Carolina

General Statute §50A-374, which provides that the trial court “may grant caretaking

authority of a child to a nonparent who is an adult family member of the child or an

adult with whom the child has a close and substantial relationship if it is in the best

interest of the child.” N.C. Gen. Stat. § 50A-374(a) (emphasis added). Even if we

agreed with Father that Elizabeth’s Consent Order was not binding on the trial court,

the trial court had the discretion to grant caretaking authority under North Carolina

General Statute § 374 but was not required to do so.

 - 32 -
 ROYBAL V. RAULLI

 Opinion of the Court

 “As used in statutes, the word ‘shall’ is generally
 imperative or mandatory.” In contrast, “may” is generally
 intended to convey that the power granted can be exercised
 in the actor’s discretion, but the actor need not exercise that
 discretion at all.

Silver v. Halifax Cty. Bd. of Commissioners, ___ N.C. ___, ___, 821 S.E.2d 755, 761

(2018) (emphasis added) (citation omitted).

 Father has not shown that the trial court abused its discretion by denying

caretaking authority to Stepmother. The trial court’s findings show it carefully

considered the entire family’s situation and tailored the order to address Elizabeth’s

needs, so we cannot discern any abuse of discretion. See Walsh v. Jones, ___ N.C.

App. ___, ___, 824 S.E.2d 129, 134 (2019) (“Our trial courts are vested with broad

discretion in child custody matters. This discretion is based upon the trial courts’

opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and

flavors that are lost in the bare printed record read months later by appellate judges.”

(quoting Shipman 357 N.C. at 474, 586 S.E.2d at 253-54)).

G. Decision-Making Authority

 Father also argues that the trial court erred by not granting Stepmother

decision-making authority under North Carolina General Statute § 50A-374, which

provides that the trial court

 may grant part of the deploying parent’s decision-making
 authority for a child to a nonparent who is an adult family
 member of the child or an adult with whom the child has a
 close and substantial relationship if the deploying parent is

 - 33 -
 ROYBAL V. RAULLI

 Opinion of the Court

 unable to exercise that authority. When a court grants the
 authority to a nonparent, the court shall specify the
 decision-making powers that will and will not be granted,
 including applicable health, educational, and religious
 decisions.

N.C. Gen. Stat. § 50A-374(c) (emphasis added).

 Father argues that Elizabeth’s Consent Order, which requires him to respond

to Mother within 48 hours regarding decisions they are to make jointly, are not

practicable during his deployment since he will be “on another continent” and

although he may have access to “video chatting and email, his military duty

frequently requires him to be away from civilian communications for days at a time.”

Since he may be unable to be reached or unable to respond within 48 hours, he

contends that Stepmother knows “his wishes” on a “wide variety of subjects,” she

should be allowed to step into his role in joint decision-making with Mother. But we

note that Father did not testify at the hearing, and Stepmother did not testify

regarding Father’s duties during his deployment, his actual communication options,

or his potential lack of access to “video chatting or email” during his deployment.

Since Father presented no evidence on these facts, we will generously assume that

Father’s argument is generally based upon the “communications” section of

Elizabeth’s Consent Order, which provides for the parents to “share and exchange

information” “via telephone, email and text messages.”

 - 34 -
 ROYBAL V. RAULLI

 Opinion of the Court

 Just as for caretaking authority, decision-making authority is a discretionary

ruling, but this subsection provides a condition precedent: the trial court may grant

decision-making authority to a nonparent “if the deploying parent is unable to

exercise that authority.” Id. Father did not present evidence regarding his potential

lack of ability to communicate with Mother by “telephone, email and text messages,”

as provided by Elizabeth’s Consent Order. Where Father did not present evidence

that his military duties would substantially interfere with his ability to use these

forms of communication or that he would normally be unable to respond to Mother

within 48 hours, the trial court had no basis upon which to find that Father would be

“unable to exercise” his decision-making authority. Father has not demonstrated any

abuse of discretion by the trial court’s denial of decision-making authority to

Stepmother.

H. Limited Contact

 Since Elizabeth’s Consent Order did not address the aspect of “custodial

responsibility” defined by the UDPCVA as “limited contact,” the trial court’s

consideration of “limited contact” was governed by North Carolina General Statute

§50A-375:

 In accordance with laws of this State and on motion of a
 deploying parent, a court shall grant limited contact with
 a child to a nonparent who is either a family member of the
 child or an individual with whom the child has a close and
 substantial relationship, unless the court finds that the
 contact would be contrary to the best interest of the child.

 - 35 -
 ROYBAL V. RAULLI

 Opinion of the Court

N.C. Gen. Stat. § 50A-375(a) (emphasis added). The trial court did grant Stepmother

“limited contact” for Elizabeth, but Father argues that the trial court erred because

the amount of time granted was “substantially reduced from” the time granted to

Father by Elizabeth’s Consent Order. He contends that the reduction in contact

between Elizabeth and her stepsister and half brother is not in her best interest.

 Unlike “caretaking authority” and “decision-making authority” under North

Carolina General Statute § 50A-374, North Carolina General Statute § 50A-375 uses

mandatory language. The trial court “shall grant limited contact with a child to a

nonparent who is either a family member of the child or an individual which whom

the child has a close and substantial relationship, unless the court finds that the

contact would be contrary to the best interest of the child.” Id. (emphasis added). “It

is well established that ‘the word “shall” is generally imperative or mandatory.’”

Multiple, 361 N.C. at 378, 646 S.E.2d at 360 (quoting State v. Johnson, 298 N.C. 355,

361, 259 S.E.2d 752, 757 (1979)). Therefore, the trial court is not required to grant

caretaking or decision-making authority, but the trial court is obligated to grant

limited contact with a nonparent who has a “close and substantial relationship” with

the child unless the court finds that doing so would be contrary to the best interest of

the child. See N.C. Gen. Stat. §§ 50A-374-375.

 Based upon the trial court’s findings, it determined that continued contact

between Elizabeth and Stepmother and her stepsister and half brother was in her

 - 36 -
 ROYBAL V. RAULLI

 Opinion of the Court

best interest. But Elizabeth’s Consent Order did not address limited contact with a

nonparent, and the trial court was not bound by the schedule of custodial time

granted to Father in the Order. The actual schedule and amount of limited contact

with a nonparent remains within the discretion of the trial court. Here, Elizabeth

and Jay already had different custodial schedules based upon the difference in their

ages and needs. The trial court did not abuse its discretion by granting “limited

contact” to Elizabeth on a different and lesser schedule than Father’s usual custodial

time under her Consent order.

 We also note that Father has not specifically argued, and we have therefore

not considered, whether the trial court should have considered any separate grant of

limited contact between Elizabeth and her step or half siblings. North Carolina

General Statute § 50A-375 provides that “a court shall grant limited contact with a

child to a nonparent who is either a family member of the child or an individual with

whom the child has a close and substantial relationship . . . .” N.C. Gen. Stat. § 50A-

375(a). A “nonparent” is “[a]n individual other than a deploying parent or other

parent.” N.C. Gen. Stat. § 50A-351(12). A “close and substantial relationship” is “[a]

relationship in which a significant bond exists between a child and a nonparent.”

N.C. Gen. Stat. § 50A-351. The Official Comment notes that

 [t]he limited contact definition allows the possibility that it
 may be granted to minors as well as adults. Thus a minor
 half-sibling or step-sibling of the child could be granted
 limited contact during a service member’s deployment.

 - 37 -
 ROYBAL V. RAULLI

 Opinion of the Court

 This type of contact with the child is a more limited form of
 visitation than courts usually grant to parents or
 grandparents outside the deployment context.

N.C. Gen. Stat. 50A-351 Official Comment. Although an order under the UDPCVA

can grant contact to another child, as opposed to the step-parent or other adult

nonparent, the order on appeal grants the limited time to Stepmother, not to her son

or daughter.12 The order contemplates that time with Stepmother will normally

include her other children as well, thus maintaining the relationships among the

children.

 Overall, the trial court’s order properly struck the balance between deference

to Elizabeth’s Consent Order and the unique provisions for “limited contact” with a

nonparent under North Carolina General Statute § 50A-375. The order’s findings of

fact support its conclusions of law, and Father has shown no abuse of discretion as to

the provisions for “limited contact” as to Elizabeth.

 VI. Jay’s Order

A. Provisions of Order on Appeal

12Since the UDPCVA provides that “[a]ny nonparent who is granted limited contact shall be made a
party to the action until the grant of limited contact is terminated,” it would appear that if limited
contact were granted to a minor child, the minor child would need to be “made a party to the action,”
a prospect which may present additional procedural complications which a trial court would need to
consider carefully. N.C. Gen. Stat. § 50A-375(b) (emphasis added).

 - 38 -
 ROYBAL V. RAULLI

 Opinion of the Court

 In addition to the findings of fact and conclusions of law quoted above, the

order includes the following findings of fact (which may be more appropriately

considered as a conclusions of law) regarding Jay:

 13. The prior custody order for the minor child, [Jay]
 designates custodial responsibility during Plaintiff
 [Father’s] deployment on behalf of the US Army and that
 order is binding on this court.

 14. The court finds that circumstances do not require
 modification of said order.

Jay’s prior order provided as follows regarding deployment:

 g. Should Plaintiff be unable to exercise his custodial time
 described herein due to travel for work or any form of
 military duty, including but not limited to: temporary
 military duty, active duty or deployment, the minor child
 shall remain in [Mother’s] custody.

Jay’s order also provided for joint decision-making in much the same manner as

Elizabeth’s consent order. Jay’s order was entered by the trial court separately from

Elizabeth’s Consent Order and it is a temporary custody order. The order provides

that a hearing upon Jay’s permanent custody would not be “scheduled before

December 2017.”

B. Distinction Between Temporary and Permanent Prior Order for Purposes of
N.C. Gen. Stat. § 50A-373(1)

 Father first argues that because Jay’s Order is a temporary order, it is not a

“prior judicial order” under North Carolina General Statute § 50A-373 because “it is

well settled law in North Carolina that a temporary order entered under N.C. Gen.

 - 39 -
 ROYBAL V. RAULLI

 Opinion of the Court

Stat. §13.5(d3) can be revisited without a change in circumstances needed” but only

upon consideration of the child’s best interests. He contends that the trial court “must

view it through N.C. Gen. Stat. § 50A-373 as a ‘circumstances required’ equals the

best interest of the child standard or through N.C. Gen. Stat. § 50A-374, which

statutorily requires a view as the best interest of the child.” Mother contends that

North Carolina General Statute § 50A-373(1) refers to a “prior judicial order” and

makes no distinction between temporary or permanent prior judicial orders. She also

argues that Father has not cited any authority in support of his argument for a

distinction between temporary and permanent orders for purposes of North Carolina

General Statute § 50A-373(1). She is correct, but since no case in the United States

has addressed this issue, neither Father nor Mother could have cited any case as

authority under the UDPCVA on this point. But the language of the statute makes

it clear that “prior judicial order” includes both temporary and permanent orders.

 In several sections the UDPCVA makes the distinction between permanent

and temporary orders, and it is obvious from the Act overall and the Comments to

the Uniform Act these words were carefully chosen, while North Carolina General

Statute § 50A-373(1) instead uses the inclusive and non-specific term “prior judicial

order.” For example, under North Carolina General Statute § 50A-353,13 regarding

13“(b) If a court has issued a permanent order regarding custodial responsibility before notice of
deployment and the parents modify that order temporarily by agreement pursuant to Part 2 of this

 - 40 -
 ROYBAL V. RAULLI

 Opinion of the Court

jurisdiction, the statute distinguishes between prior temporary and permanent

orders regarding custodial responsibility for purposes of determining jurisdiction

under the UCCJEA. In North Carolina General Statute § 50A-374(b), the statute

refers to an “existing permanent custody order”:

 Unless the grant of caretaking authority to a nonparent
 under subsection (a) of this section is agreed to by the other
 parent, the grant is limited to an amount of time not
 greater than (i) the time granted to the deploying parent in
 an existing permanent custody order, except that the court
 may add unusual travel time necessary to transport the
 child or (ii) in the absence of an existing permanent custody
 order, the amount of time that the deploying parent
 habitually cared for the child before being notified of
 deployment, except that the court may add unusual travel
 time necessary to transport the child.

N.C. Gen. Stat. § 50A-374(b). Therefore, the UDPCVA gives greater weight to a prior

permanent custody order than a prior temporary order for purposes of jurisdiction

under the UCCJEA and the terms of a grant of caretaking authority. But under

North Carolina General Statute § 50A-373, the term “prior judicial order”

encompasses both temporary and permanent custody orders. A permanent order is

given more weight for the specific purposes set out in the UDPCVA, but Jay’s

Article, for purposes of the UCCJEA, the residence of the deploying parent is not changed by reason
of the deployment.
(c) If a court in another state has issued a temporary order regarding custodial responsibility as a
result of impending or current deployment, for purposes of the UCCJEA, the residence of the deploying
parent is not changed by reason of the deployment.” N.C. Gen. Stat. § 50A-353 (emphasis added).

 - 41 -
 ROYBAL V. RAULLI

 Opinion of the Court

temporary order is a “prior judicial order” for purposes of North Carolina General

Statute § 50A-373(a).

C. Denial of Caretaking Authority and Decision-Making Authority

 Both Mother and Father acknowledge that Jay’s order more clearly addresses

custodial responsibility in the event of Father’s deployment than did Elizabeth’s

Consent Order, discussed above. Jay’s order uses the specific term “deployment,”

although, as discussed above, use of that specific term is not necessarily controlling.

If the provisions of the prior judicial order encompass custodial responsibility under

the circumstances described in North Carolina General Statute § 50A-351(9), it is a

“prior judicial order designating custodial responsibility of a child in the event of

deployment” and it “is binding on the court unless the circumstances require

modifying a judicial order regarding custodial responsibility.” N.C. Gen. Stat. § 50A-

373.

 Also, as discussed above regarding Elizabeth’s Consent Order, the standard for

modifying the provisions of the prior judicial order is lesser than the substantial

change in circumstances normally required for modification of a permanent custody

order under Chapter 50, and the trial court has the discretion to determine if the

“circumstances require” entry of an order if in the best interests of the child. Father

argues that his “objective” in bringing his motion under the UDPCVA was to “keep

both children’s custody situation the same as when as when he was not deployed.”

 - 42 -
 ROYBAL V. RAULLI

 Opinion of the Court

Father’s goal is understandable, but it is impossible to keep their “custody situation”

the same since he—the children’s Father—is not in the home. In some circumstances,

a trial court may determine that the custodial schedule should remain the same,

despite the absence of the parent, but based upon the trial court’s findings of fact, we

see no abuse of discretion in the trial court’s determination that circumstances did

not require modification of the caretaking authority or decision-making authority as

set forth in Jay’s order, for the same reasons as stated above for Elizabeth.

D. Limited Contact

 Just as Elizabeth’s Consent Order did not address the aspect of “custodial

responsibility” defined by the UDPCVA as “limited contact,” Jay’s order had no

provisions for “limited contact.” Thus, Jay’s order was not binding on the trial court

as to limited contact. In addition, the trial court’s consideration of “limited contact”

was governed by North Carolina General Statute § 50A-375:

 In accordance with laws of this State and on motion of a
 deploying parent, a court shall grant limited contact with
 a child to a nonparent who is either a family member of the
 child or an individual with whom the child has a close and
 substantial relationship, unless the court finds that the
 contact would be contrary to the best interest of the child.

N.C. Gen. Stat. § 50A-375(a).

 As discussed above, the language of North Carolina General Statute § 50A-375

is mandatory, but there are two conditions for granting limited contact: (1) the child

has a “close and substantial relationship” with the nonparent, and (2) contact with

 - 43 -
 ROYBAL V. RAULLI

 Opinion of the Court

the nonparent is not contrary to the best interest of the child. Id. The trial court’s

findings do not specifically state whether Jay has a “close and substantial

relationship”—a term defined by North Carolina General Statute § 50A-351(4)—with

Stepmother or his step and half siblings, but the overall import of the evidence and

findings suggests that he does have this type of relationship with Stepmother. In

fact, Mother’s response to Father’s motion for an order under the UDPCVA admits

many allegations regarding the relationships between both children, Stepmother,

and their step and half siblings. The trial court noted that both Mother and

Stepmother were working together to maintain the relationships among the four

children and were acting in their best interests. Nothing in the trial court’s order

suggests that limited contact with Stepmother would be “contrary to the best interest

of” Jay.

 The trial court determined that under North Carolina General Statute § 50A-

373(1), it could not grant limited contact to Stepmother for Jay based upon Jay’s

Order which had provisions regarding deployment. To that extent, the trial court

erred in its interpretation of the statute.14 We therefore reverse the order as to the

14 The trial court’s statements in open court support this interpretation. When Father’s counsel asked
for clarification as to the denial of limited contact with Jay, the trial court stated “I am finding that
his prior order is binding because I’m not finding that circumstances require the modification of that,
and therefore I cannot change that order. That does not prohibit [Mother] from allowing [Jay] to go.
It’s just that there is a prior order that is specifically talking about the custodial responsibility of the
child in the event of deployment, and I’m finding that that is binding on this court, and I’m not going
to change it.”

 - 44 -
 ROYBAL V. RAULLI

 Opinion of the Court

denial of limited contact as to Jay and remand for entry of an order addressing limited

contact. If the trial court determines that Jay does not have a “close and substantial

relationship” with Stepmother or his step and half siblings, or if it determines that

limited contact would be contrary to his best interests, the trial court may enter a

new order denying Father’s request for limited contact. Since the trial court did not

make these specific findings or conclusions based upon its interpretation of Jay’s

order and North Carolina General Statute § 50A-373(1), the trial court should do so

on remand. In addition, the trial court may in its discretion receive additional

evidence limited to this issue on remand. If the trial court orders limited contact on

remand, after making appropriate findings of fact, it may set the schedule for the

limited contact in its discretion and is neither required nor prohibited from following

either the schedule granted to Father in Jay’s order or the same limited contact

schedule as granted for Elizabeth. The trial court may consider Jay’s age and needs

as well has his, Mother’s, and Stepmother’s schedules, and any other factors relevant

to establishing the times for limited contact with Stepmother.

 VII. Time Limit

 Father’s last argument raises a procedural issue. He argues the trial court

erred by limiting each side to 20 minutes for presentation of their evidence and

arguments, and “[t]his amount of time was insufficient for the Plaintiff-Appellant to

open, submit evidence with more than one witness, cross-examine the Defendant-

 - 45 -
 ROYBAL V. RAULLI

 Opinion of the Court

Appellee, and close in this hearing.” However, as Mother points out, Father’s counsel

did not object to the time limitations or request additional time before the trial court.

She also notes that Father did not use all of the 20 minutes allotted to him, nor did

he attempt to offer affidavits or other documentary evidence in addition to

Stepmother’s testimony.

 “[T]he manner of the presentation of evidence is a matter resting primarily

within the discretion of the trial judge, and his control of the case will not be disturbed

absent a manifest abuse of discretion.” Wolgin v. Wolgin, 217 N.C. App. 278, 283, 719

S.E.2d 196, 199 (2011) (quoting State v. Harris, 315 N.C. 556, 562, 340 S.E.2d 383,

387 (1986)) (affirming denial of appellant’s motion for a new trial where the trial court

limited the presentation of evidence when “(1) the length of the trial was discussed at

pre-trial conferences and both parties agreed to a two-day trial; (2) the court made

inquiry concerning the ability of both parties to present evidence within a two-day

time frame and neither party objected during pre-trial conferences; (3) the court made

several references to the time constrictions during the trial; and (4) at the close of

Defendant’s evidence, Defendant made no objection to time limits enforced by the

trial court on the second day of trial”). We also note that this hearing was held on an

expedited basis for purposes of entering a temporary order, and the trial court may

take these factors into account when setting time limits for the hearing. Because

Father did not make a timely request for additional time for presentation of his case

 - 46 -
 ROYBAL V. RAULLI

 Opinion of the Court

prior to or during the hearing, this issue is deemed abandoned and cannot be raised

for the first time on appeal. N.C. R. App. P. 10(a)(1).

 VIII. Conclusion

 We affirm the trial court’s order as to Elizabeth, but we remand for the trial

court to add Stepmother as a party to this action “until the grant of limited contact is

terminated” under North Carolina General Statute § 50A-375(b) and to enter an

order granting limited contact with Jay to Stepmother, unless the trial court

determines that Jay does not have a “close and substantial relationship” with

Stepmother or that limited contact would be contrary to his best interests. The trial

court may in its sole discretion receive evidence on remand relevant to this

determination only or it may enter an order based upon the current record.

 AFFIRMED IN PART AND REMANDED.

 Judges HAMPSON and YOUNG concur.

 - 47 -